## MILBURN vs. GILMAN.

A ministerial officer is not liable in trespass for executing a writ issued under the judgment of a court having jurisdiction of the person and subject matter, although the judgment be erroneous.

## APPEAL from St. Louis Circuit Court.

### *Statement of the Case.*

In February, 1846, W. S. Gilman brought his action of *trespass de bonis asportatis* against William Milburn, in the St. Louis Circuit Court, for taking the hull of a steamboat. Plea, not guilty—verdict and judgment for plaintiff—appeal by defendant.

*Milburn* vs. *Gilman.*

The case is this: On the 11th October, 1844, a suit was brought in the St. Louis Circuit Court, in the form of the statute, by Solomon Rogers against the steamboat Lebanon; the warrant was issued and delivered to sheriff Milburn to be executed, who took the boat, and, after detaining it one day, released it, upon bond being given according to law.

While the above named suit was pending in the Circuit Court, in April, 1845, a number of suits were brought before justices of the peace against the said boat, warrants issued and served by constables, judgments rendered and orders of sale issued. Under these orders, the constable sold the boat to one Clark, for $1305, who got possession. The boat was run a few trips from St. Louis to Alton. It then got into the hands of one Captain Lamothe; how, or when, not explained in the testimony; and Lamothe sold and delivered it to Gilman, the plaintiff, who was in the act of dismantling the boat and changing it into a barge, when it was seized by the sheriff, under an execution and order of sale, as stated below. On the 6th of February, 1846, in the Circuit Court, judgment was rendered in said suit of Rogers vs. steamboat Lebanon, against said boat and the bondsmen; and an execution and order of sale was immediately issued thereon, and delivered to sheriff Milburn, the defendant, who delivered it to his deputy, Henry B. Belt, to be executed. And the said Belt seized the boat, in the hands of Gilman, the plaintiff, and sold it under said execution to satisfy the judgment of the Circuit Court. Milburn had nothing to do with the transaction further than that, as sheriff, he received the writ and handed it to his deputy to be executed, and, after the sale, received the money from his deputy and paid it over to the plaintiff's attorney. At the time of seizing the boat, Belt was warned not to seize it, and notified of the nature of Gilman's claim.

The testimony being closed, the defendant moved the three following instructions, all of which were refused, and exceptions taken, viz:

1. " If the jury believe from the evidence that the suit, the record of which has been given in evidence, and in which suit the execution given in evidence and under which the sheriff took and sold the boat, was instituted in this court, and the warrant served, and so the boat brought within the jurisdiction of this court, before the suits were brought under which the plaintiff claims, the execution in evidence is a full defence, and the jury ought to find for the defendant."

2. " If the jury believe from the evidence, that in seizing and selling the boat in question, Milburn acted only as sheriff of the county of St. Louis, and in so acting, did nothing but what was expressly commanded him in the writ of execution, they ought to find for the defendant."

3. " If the jury believe from the evidence that the defendant, William Milburn, did not of himself personally take the boat, nor sell the same, and no otherwise commanded the taking and sale thereof than by delivering the writ of execution to Henry B. Belt, his deputy sheriff, to be executed, he is not liable in this action for any of the acts of said Belt not required to be done by said writ."

The court then gave, on its own mere motion, the following instruction, which was excepted to by the defendant, viz:

" If the jury believe from the evidence that the steamboat Lebanon was seized by the constable in the case of Henry Powers and others, plaintiffs, read in evidence, and that judgments in these cases were perfected against the said boat, and the said boat ordered to be sold under those judgments, and that under the orders of sale read in evidence, the constable gave notice and made sale of the boat, at public vendue, to the person or persons under whom the plaintiff claims title, and that the plaintiff, at the time of the seizure of the said boat by the defendant, had the said boat in possession, and notified the defendant of his claim of title and of the nature thereof—if these facts appear from the evidence, the plaintiff is entitled to recover against the defendant in this action."

GAMBLE & BATES, *for Appellant, insist:*

1. The steamboat Lebanon was bound by the seizure under the warrant, ads. S. Rogers; and

the bonding her out of the custody of the sheriff did not discharge the lien or the debt. R. C. of 1835, p. 103, secs. 5, 10; act 1839, p. 13, sec. 2. The act of 1845 provides for the first time for giving a bond that may discharge the lien, and provides for such discharge. See p. 99, sec. 9.—Sec. 10 preserves the old bond, with its old effects; not discharging the lien.

2. Unless the bringing of the suits before the justice of the peace ousted the Circuit Court of its jurisdiction, (to suppose which would be absurd) that court was bound to hear and determine Roger's suit against the boat; and having determined it in favor of Rogers, the law allowed the court no discretion as to the mode of execution, but in terms, requires an order of sale to be awarded. R. C. 1835, p. 103, sec. 10. In Evans vs. King, 7 Mo. R., 413, this court determines that the bonding of attached property does not discharge the lien.

3. The court having jurisdiction of the case, and having issued the order of sale, the sheriff had no discretion, but was bound to obey it. 1 Mo. R., 134, Brown vs. Henderson; 4 Mo. R., 1, 3, Burton vs. Sweaney; ib., 37-8, Mitchell vs. Gregg. And to the same purpose, in 8 Am. Com. Law, 48-9, with abstract of cases from 9 Conn. R., 141. This case in Conn. R, is full to the point, and very strong. 1 Ala. R., 49; 12 Wend. R., 96.

If a *fi. fa.* come to the sheriff, he must execute it, though the plaintiff or defendant die after the writ comes to his hands. 2 Ld. Ray., 1072.

4. The sheriff being but a minister, and bound to obey the writ, he cannot be made responsible in any form for that obedience.

5. But if responsible at all, it is well settled that *trespass* will not lie against him for such cause. 9 Mo. R., 151, Ivy vs. Barnhart, and the above cited case, Watson vs. Watson, 9 Conn. R., 141, is full to the same point.

FIELD & CARROLL, *for Appellee, insist:*

1. The plaintiff below acquired, through the purchase at the constable's sale, a title to the boat, discharged of all liens prior in date to that sale. Pamph. Acts 1841, p. 18; steamboat Raritan vs. Smith, 10 Mo. R.

2. The seizure of the boat by the sheriff was a *trespass*.

1st. The record and proceedins against the boat under which the sheriff attempted to justify, (the same proceedings having been commenced prior to the constable's sale) were, in effect, between other parties, and were not admissible as a justification against the plaintiff below. 3 Cow. Phil. Ev., 880.

2nd. By the sale by the constable, the jurisdiction of the Circuit Court in the suit *in rem*. was divested, and the condemnation of the boat and order of sale were void. 1 Kent Com., 359; Hudson vs. Guntin, 4 Cranch, 293; 3 Cow. Phil. Ev., 886.

3rd. If the order of sale was not void, it was irregular or erroneous, and as the plaintiff below was a stranger to the proceedings, and could not bring error, he might falsify by evidence. See Griswold vs. Stewart, 4 Cow. R., 457, and cases cited.

4th. If the proceedings and judgment were regular, still the order of sale was irregular and illegal and furnished no justification for the seizure.

5th. If the judgment and order of sale were regarded as regular, still, the boat, under the law, in the hands of the plaintiff below, was, by reason of the constable's sale, exempt from the operation of the order of sale. The case may be likened to an execution satisfied or released, or more nearly, perhaps, to the case of property exempt from execution by law; in which cases, the parties proceeding under the process, are trespassers.

It is no answer for the sheriff to say, that he was justified by the letter of his process, for he had notice of the facts which rendered the process invalid as against the boat in the hands of the plaintiff below. Kuhn vs. North, 10 S. & R., 399; Sherman vs. Boyce, 15 J. R., 443; King vs.

Goodwin, 16 Mass. R., 63; Trowbridge vs. Cushman, 24 Pick. R., 310; Fairfield vs. Baldwin, 12 Pick. R., 388; 3 Cow. Phil. Ev., 990, 1008.

3. The proceedings under which the sheriff justified, were entitled to no priority from the circumstance of being first instituted.

1st. The lien of the process was gone by the giving of the bond. In this respect, the case differs from an attachment; for the bond is conditioned to *pay the debt and costs*, and on giving the bond, the boat is to be *discharged*.

2nd. Besides, the forfeiture of the bond and taking judgment against the sureties, is holden in attachment cases to discharge the lien of the process. Lusk vs. Ramsey, 3 Munf. Va. R., 417; Malone vs. Abbot, 3 Humph. Tenn. R., 332; 2 Tuck. Com., 365, 366.

It may be added, that a construction continuing the lien of process against the boat after it had been discharged under bond, would open a door to fraud, particularly as to such persons as become creditors after the boat was discharged. In fact, the demands under which the boat was seized and sold by the constable, in this case, accrued while the boat was running, after she was discharged under bond.

SCOTT, J., *delivered the opinion of the Court.*

To the objection that Milburn, not having put in a plea of justification, cannot avail himself of the matters now sought to be used as a defence for him, it may be answered, that by statute, under the general issue, an officer who is sued for an act done by virtue of his office, may give the special matter in evidence.

Whether the giving of a bond under the statute for the release of the boat was a discharge of the lien, is not a necessary question in this case. It may be assumed that the giving of a bond was a discharge of the lien, and yet the principle is not perceived on which the sheriff is held liable in trespass for executing his writ. It is not presumed that the Circuit Court of St. Louis county is not a court of general jurisdiction; its jurisdiction over the subject matter is unquestioned, and yet, for an error in its judgment, shall its officer be mulcted in heavy damages? Does the law constitute the executive officer of a court an appellate tribunal to revise the proceedings of the court whose minister he is? There is no doubt of the correctness of the position that a person who is no party nor privy to a judgment may impeach it in a collateral proceeding. But while third persons may impeach, they shall also be protected by judgments when they act under them *bona fide*. The judgments of a court of competent jurisdiction, although obtained by fraud, have never been considered as absolutely void, and therefore all acts performed under them are valid as far as respects third persons. A sheriff who levies an execution under a judgment fraudulently obtained, is not a trespasser; nor can the person who purchases at a sale under such an execution, be compelled to relinguish the property he has purchased. Simms vs. Slo-

cum, 3 Cr., 306. This is not like the case of a sheriff who, under process against one man, takes the property of another. The judgment of the court condemns, and the order requires the sheriff to sell the chattel, for the sale of which this action is brought. It is more like proceedings in attachment, where the maker of a note is garnisheed at the suit of a creditor of the payee. Suppose the maker answers that the payee, for aught he knows to the contrary, is still the owner; issue is taken on the fact, and it is found accordingly, and judgment should be entered, and execution issued against the maker, which is executed, on what principle would an action of trespass lie against the sheriff by an assignee of the note before the garnishment, although the sheriff might be apprized of the fact of such ownership? It is said, that a sheriff, at his peril, must execute erroneous or voidable process; the knowledge of the fact that it is voidable or erroneous, will not exempt him from liability for *refraining* to execute it. In what a painful situation is an officer thus placed, who can neither stand still nor go forward without subjecting himself to the action of one party or the other. The order under which the sheriff acted, emanating from a court of general jurisdiction, having cognizance both of the matter and persons, although it was erroneous, he was bound to execute it; and being thus bound, he cannot be liable in trespass for having done so. It must be admitted that the cases of Fairfield vs. Baldwin, 12 Pick., and Trowbridge vs. Cushman, 24 Pick., would seem to countenance the idea of the sheriff's responsibility under the circumstances of this case. The case of Watson vs. Watson, 9 Con., 141, is to the contrary, and is in acccordance with other cases and the principles of law. Surely, if a sheriff is bound to execute erroneous process, the knowledge of the fact that it is erroneous, will be no justification for his refusal to act. This has always been so ruled, and is now incontrovertible law. We are not to be understood as saying, that in such cases as that under consideration, the plaintiff is without redress. If his property has been taken to satisfy another's debt, it would be hard that the law did not afford him repress. All that is meant to be said is, that the sheriff is not liable to an action of trespass under the circumstances of this case.

Judgment reversed, Judge McBride concurring.

NAPTON, J.—*Separate opinion.*

I am satisfied of the propriety of the construction which the majority

of the Court have assumed of the act of 1842, concerning demands against boats and vessels. When the bond was given, the lien on the boat was discharged, and, as a consequence, whatever might be the form of the *judgment* directed by the statute, no execution could legally issue against the boat. The execution in this case, under which Milburn justified, did issue against the boat as well as against the securities in the bond, and I am of opinion that this execution did not justify the sheriff in seizing the boat.

It would be a vain task to review the numerous adjudications which have been made, both in England and the United States, upon this point. The most satisfactory exposition I have seen of the liabilities of these ministerial officers, is contained in the opinion of Judge Marcy, in the case of Savacool vs. Boughton, 5 Wend., 173. The doctrine maintained in that case is, that if a mere ministerial officer executes any process, *upon the face of which it appears* that the court which issued it had not jurisdiction of the subject matter or of the person against whom it is directed, such process will afford him no protection for acts done under it. This view of the subject is more indulgent to the officers than many of the decisions had previously been, and is sustained by the weight of authority both in England and this country. The case of Wise vs. Withers (3 Cranch, 331) is very properly disregarded, notwithstanding the imposing authority of the court which decided it.

It cannot be denied, however, that there will be difficulty in applying any general principle or rule which may be established to individual cases. There are two cases reported in Strange which seem to illustrate the distinction taken in Savacool vs. Boughton, as well as any which can be cited. In Hill vs. Bateman, (2 Strange, 710) a warrant was issued of a character which the general powers of the justice warranted, but which the particular circumstances of that case did not, and it was held to be a justification to the officer. But in Shergold vs. Halloway, (1 Strange, 1002) a justice issued a *warrant* against a defendant in a suit for wages, when the law only authorized a *summons*, and the constable who served the warrant was held liable. In the former case, the particular circumstances which rendered the writ improper, would not be detailed in the writ itself; but in the latter, as the nature of the action would appear on the face of the writ, the constable was bound to take notice of the law which prohibited a writ of that character to issue in such an action.

The case of Watson vs. Watson, (9 Conn. R.) is another recognition of the same general principle asserted in the case of Savacool vs. Bough-

ton, although there was some difference of opinion as to the propriety of its application to the facts in that case. The doctrine maintained by the court in that case was, that the sheriff was a mere ministerial officer and had no portion of judicial authority, nor means of inquiring into the causes of action contained in the writs and declarations put into his hands, and that obedience to all precepts put into his hands, was, as the court expressed it, "the first, second and third part of his duty." They therefore held, that if the writs issued from competent authority, and with legal regularity, and *so appeared on their face*, the officer was justified in obeying. That was a writ of replevin, and it seems that, in Connecticut, a writ of replevin only lies in cases of attachment and distress.— The writ stated that the horse, which the officer was commanded to take, was impounded by the defendants, and that the plaintiff had given bond according to law. The writ was held to be legal *on its face*, and therefore a justification. Judge Daggett agreed to the general proposition, but held the sheriff liable because the writ commanded him to replevy a horse which was impounded or distrained, when, in point of fact, the horse levied on was neither impounded nor distrained, and the sheriff knew it.

This idea of Judge Daggett, in Watson vs. Watson, that an officer's individual knowledge of facts, *outside of the writ*, which show the want of authority in the court to issue it, has been maintained as law by several respectable courts. The cases are referred to by Judge Cowen, in his notes to Philips, (note 694.) The principle is distinctly asserted by Baron *Powell*, in Gwinne vs. Poole, 2 Lutw., 1560, which is stated at large by Judge Cowen in the note first referred to, and regarded by him as the leading English case on the subject.

Many forcible reasons may suggest themselves against the adoption of such a principle as this, but as I do not rely upon it to fix the responsibility of the sheriff in the present case, it is unnecessary to go into the question.

The case now under consideration may be safely placed upon the same broad and liberal ground maintained in Savacool vs. Boughton, and Watson vs. Watson. The writ, on its face, shows the want of jurisdiction in the court. It is an execution against a boat which had been bonded, and therefore discharged from the jurisdiction of the court, and these facts appear upon its face. The sheriff is bound to know the law; he is therefore to take notice that he has a valid writ. Process void for want of jurisdiction appearing on its face, cannot protect the officer. If a writ is put into his hands, reciting, that whereas, A has recovered against B a judgment for $100, you are therefore commanded to take B, and hang

him by the neck, or imprison his body, until the debt aforesaid be paid, is he bound to obey, or justified in obeying such a writ? Is he not bound to know the law of the land, which exempts the debtor from all restraint or injury? If this be thought an extreme case, let it be supposed that an execution recites a judgment *en personam*, and at the same time shows on its face that the party against whom the judgment had been rendered, had no notice of the proceeding, would the writ be a protection to the officer? Now, the present is a case of a judgment *in rem.*, and an execution *in rem.*, where the subject matter against which the judgment had gone and the execution issued, had ceased to be within the jurisdiction of the court, and had been regularly discharged by the execution of a bond in pursuance of law, and these facts appeared upon the execution. It is true, that there is no formal recital in the writ that the boat had been bonded, but the execution issues against the obligors in the bond, as well as against the boat, and this could not be legally done if the construction of the statute be correct, which holds the giving of a bond to discharge the boat from the lien. The execution is therefore informal and *illegal on its face*, and cannot, in my opinion, protect the officer.