WILLIAM H. GLASGOW, Respondent, *v.* EDWARD S. ROWSE, Appellant.

1. *Revenue—Income Tax—Assessment—Auditor—Act of February* 20, 1865— *The word "year," how used.*— Section 3 of the act of February 20, 1865 (Sess. Acts 1865, p. 112), enacted that the assessment upon salaries and incomes should be based upon the amount of such salary or income received by the person assessed in "the year next preceding the time of the assessment." The word "year," as therein used, referred to a fiscal year. And the auditor, in designating the 31st day of March, 1865, as the end of the year upon which assessments must be made, overstepped his authority; and the action of the assessors in obeying and conforming to his instructions was irregular. The whole assessment was not void, but was simply erroneous as regarded a part of the time. The plain meaning and true intent of the act was that the additional tax on incomes should be levied on an assessment for the preceding year, which would coincide with and be founded on the books theretofore made out by the respective officers.

2. *Revenue — Year — Calendar, fiscal.*— Unless otherwise expressed, the word "year" will always be intended to mean a calendar year; but where applied to matters of revenue, the presumption is in favor of its referring to a fiscal year.

3. *State and County Collector — Levy under an irregular assessment — Trespass.*—If the law under which an assessment is made be not unconstitutional, even though the assessors committed an irregularity in the manner of making the assessment, the collector cannot be held liable, in an action of trespass, for executing a warrant for the collection of the tax founded on such assessment.

4. *Taxation — Constitution — Rule of equality or uniformity, how construed and applied — Legislature, power of.*—The constitutional requirement that taxation upon property shall be in proportion to its value does not include every species of taxation. Capitation taxes have effect solely upon persons. Income taxes have a mixed effect upon persons and property; yet neither species comes within the constitutional prohibition. The constitution enjoins a uniform rule as to the imposition of taxes on all property, but does not abridge the power of the Legislature to provide for a revenue from other sources. It was intended to make the burdens of government rest on all property alike—to forbid favoritism and prevent inequality. Outside of the constitutional restriction, the Legislature must be the sole judge of the propriety of taxation, and define the sources of revenue as the exigency of the occasion may require.

5. *State Income Tax, constitutionality of.*—The income tax, under the act above referred to, was uniform and equal as to the classes upon whom it operated. It did not come within the meaning of the term "property" as used and designated in the constitution, and it was not in conflict with any provision of that instrument.

*Appeal from St. Louis Circuit Court.*

The material facts appear in the opinion of the court.

*H. A. Clover*, for appellant.

I. The act of the General Assembly of the State of Missouri, approved February 20, 1865, entitled "An act to levy additional State taxes for the years 1865 and 1866" (Sess. Acts 1865, p. 112), was a constitutional and valid act. (Locke v. New Orleans, 4 Wall. 172.)

II. The assessment of the tax against the plaintiff was lawfully and regularly made under said act.

III. Whether the assessment was in proper form or not, the defendant cannot be held liable as a trespasser; he is protected and justified by the tax bill, and is perfectly defended, as a ministerial officer charged by law with the execution of process, under the evidence in the cause. 1. The assessor has full jurisdiction in the premises to make an assessment against the plaintiff under

the income-tax law.    2. If there was mere error in the manner
of assessment by the assessing power, it was not the duty of the
defendant, a ministerial officer, nor had he the right to refuse,
to execute the process.    (Turner v. Franklin, 29 Mo. 286;
State to use, etc., v. Shacklett *et al.*, 37 Mo. 280; Milburn v.
Gilman, 11 Mo. 67.)

*Hitchcock & Lubke,* and *Glover & Shepley* for respondent.

I. An illegal assessment is no protection to a ministerial officer
who, under color thereof, seizes the property of another.   (Clout-
man v. Pike, 7 N. H. 209; State to use, etc., v. Shacklett, 37
Mo. 280, 284; 5 Wend. 172, 173; 2 Hill. 418–421; Thomp-
son v. Currier, 4 Fost., N. H., 237; Pickering v. Coleman, 12 N.
H. 148; Shaw v. Pickett, 25 Verm. 423.)

II. The assessment was illegal and void; because, 1. It was
not made in accordance with the terms of the act of February
20, 1865, under which the defendant justifies his action, and is
therefore without lawful force or authority.    2. The act of Feb-
ruary 20, 1865, is in conflict with section 30, article I, of the
constitution of Missouri, which provides that all property subject
to taxation ought to be taxed in proportion to its value.

1. The State auditor had no right to change the period for
which incomes were made taxable by said act.    The language of
the act as to this is as follows:   " Sec. 2: There shall be levied,
assessed, and collected, for the year 1865, a tax of two per cent.
on the salaries and incomes of all other persons, including mili-
tary officers, whether such incomes are derived from fees or any
other source whatever," etc.    And in relation to auditor's duties:
" Sec. 5.  The auditor of public accounts is hereby directed to
issue his instructions to the several assessors, clerks, and col-
lectors, to correct and perfect assessments and tax books in con-
formity with the provisions of this act. "    The only period for
which the act directs or authorizes an income tax to be levied or
assessed is for the year 1865.    The only construction which any
court or officer can put on this, so far as these words are con-
cerned, is that the calendar year was meant.    By section 22,
chapter 96, Revised Code 1855 (R. C. 1855, p. 1027), the word

" year" is expressly declared in all statutes of this State to mean a calendar year, unless otherwise expressed. There is nothing expressed in this act to show or justify any different meaning for the word. The year 1865, then, is the calendar year from January 1 to December 31, 1865. But it may be said that the statute should be construed with reference to its subject matter and context, and that to interpret the year 1865 to mean the calendar year would be to fix a period different from the fiscal year, for which all other taxes were assessed. Admitting this to the full extent, the assessment was still unauthorized by the act. The fiscal year, or the year for which all other State taxes were assessed, did not begin or end on the 31st of March, but on the first Monday of September (Adj. Sess. Acts 1863, pp. 61, 68) ; and the substitution for either the calendar year or the fiscal year, as fixed by the general revenue law, of the year ending March 31, 1865, was wholly unauthorized on the part of the auditor of public accounts. The fifth section of the act, in directing him to issue his instructions to the several assessors, etc., to correct and perfect tax books in conformity with the provisions of this act, clearly shows that the intention of the Legislature was to simply add to the property subject to taxation for the fiscal year 1864-5 a new subject of taxation, to-wit : incomes. He was not directed or authorized to instruct any assessor to open new books. They were to correct and perfect tax books — not to open or prepare them. The intention was, therefore, that the tax books already prepared and in use as authorized by law for the fiscal year ending first Monday of September, 1865, when the fiscal year 1865-6 began, should be perfected and corrected by inserting this new subject of taxation. If, then, the auditor had instructed the assessor to require of each tax-payer to return his income for the year preceding the first Monday of September, 1864, the day on which the State tax of 1865 was issued, in contemplation of law he would have obeyed the directions of the Legislature. This act nowhere authorizes the auditor to fix the time of the assessment.

This being the case, the assessment was without authority of law, and simply void. Statutes of any kind imposing taxes, and

Glasgow v. Rowse.

all acts, proceedings, and rights under or derived from them, are strictly construed. The power of taxation, indispensable as it is to the sovereignty and existence of a State, is simply a form of taking his property away from the citizen. When lawfully exerted within the limits of the constitution, this power supports all lawful acts necessary to its exercise. But the courts cannot sanction any act or sustain any alleged authority not clearly within the terms of the law. Any other doctrine would place the property of its citizens at the mercy of the ministerial and other officers.

The decision of the court below was given only upon the point above contended for — the irregular and therefore void character of the assessment itself, and the consequently void character of the tax bill and lack of justification or legal authority for the seizure made by the defendant.

2: But the respondents further contend that the act was illegal and void because the act itself, so far as it relates to a tax on incomes, was in violation of the constitutional requirement that all property should be taxed in proportion to its value.

This clause in the constitution is a means to an end, and that end is that the burden of the government should be fairly divided and equally borne. Chancellor Kent declares the fundamental principle which this clause in our constitution was meant to embody and to enforce, as follows: "Every person is entitled to be protected in the enjoyment of his property, not only from invasions of it by individuals, but from all unequal or undue assessment on the part of government. It is not sufficient that no tax or imposition can be imposed upon the citizens except by their representatives in the Legislature. The citizens are entitled to require that the Legislature itself should cause all public taxation to be fair and equal, in proportion to the value of property, so that no one class of individuals and no one species of property may be unequally or unduly assessed." (2 Kent's Com. 331, 10th ed., 416.) This cardinal principle of all just governments has repeatedly been declared and enforced in the constitutions of the several States, in acts of Congress admitting States into the Union, and by the decisions of courts of last resort, avoiding and defeating repeated attempts on the part of the State Legislature

to disregard it. (State Bank v. Savannah, Dudley's R. 132; 10 Mass. 514; 17 Mass. 461; Pike v. The State, 5 Pike, Ark., 204; Sawyer v. Alton, 3 Scam. 127.) The clause in our State constitution that all property shall be taxed in proportion to its value has been a constitutional provision ever since the State was formed.

The revenue acts passed, year after year, aim at preventing the very evil which inheres in the law under which the defendant here justifies. (Gen. Stat. 1865, ch. 11, p. 95, § 4; R. C. 1855, ch. 135, art. I, p. 1324, § 4; Sess. Acts 1864, p. 66, § 3.)

These provisions were adopted in order to avoid double taxation. Unless they existed, the merchant would have been twice taxed on his goods: once on his license bond, upon their value; and again, in the same year, on the money, notes, and bonds which he held after selling them, and which were only the same value in other form.

The act of February 20, 1865, requires the assessment of two per cent. to be made on the salaries and incomes of all persons, whether such incomes are derived from fees or any other source whatever. Not only is no distinction made as to the source of any particular income, but it is expressly provided that none shall be made. Whatever is income, whatever increased value has been realized within the year in any manner, from any source — whether from labor, physical or mental, from profits on sales of goods or lands, from hire of chattels or rents of real estate — all is taxable (above $600) under the name of "income," because it is such. No exemption or provision is made, no precaution taken, in this sweeping enactment, to prevent the injustice of double taxation just referred to, which is so carefully guarded against by the merchants, in the case of goods sold and lands disposed of, upon which, as goods and lands, a tax may have been paid.

The sole test of taxable quality under this act is the fact that the amount in question came into the hands of the tax-payer as income during the previous year. Whatever was so received or realized by him is for that reason assessed as income. It may have been money realized as profits in the sale of goods, which goods have already paid a tax in the way of a merchant's license.

If so, it is not taxable the same year as cash, because it has already been taxed that year as goods; but it is taxable that year again as income, if this act of February 20, 1865, be valid. It may have been profits on the value of lands which have already paid a tax that year as such, and these profits may exist in the form of notes or bonds taken by the tax-payer for such sales. If so, these notes or bonds are not taxable those years as notes or bonds, for the same value has already paid a tax as lands, and double taxation is unconstitutional. Nevertheless, under the act of February 20, 1865, they are taxable again that year under the name of income. In many different ways that which is assessed as income may have already paid a tax, and double taxation thus result.

If it had been provided in effect that all incomes should be taxed at a given rate, except when such income was money on hand (for instance, on the first Monday of September, 1864), and was returned and assessed as such—then, in respect of our illustration, the injustice of double taxation would be prevented; and so in respect to any other part of a taxable income, it would have been perfectly easy to provide against double taxation. But the act of February 20, 1865, did no such thing—it actually prevented tax-payers and assessors making the distinctions necessary to that end, and blended the whole mass of single and double taxes into one undistinguishable sum. This being so, the law is void so far as it admits or authorizes the assessment of the two-per-cent. tax on all incomes, from whatever source derived. (Blackw. on Tax Tit., 2d ed., p. 163; State v. Falkenburg, 3 Green, 320; C. & A. R.R. Co. v. Astor House, 3 Harrison, 11; 1 Pet. 425.) Statutes are never to be construed so as to work injustice. (7 Johns. 495, 496.) Revenue statutes are to be construed most favorably to the citizen. (10 Wend. 186; 9 Pick. 414; 8 Ga. 30; Dudley's R. 132; Blackw. on Tax Tit. 29; Crow v. The State, 14 Mo. 312.)

WAGNER, Judge, delivered the opinion of the court.

Plaintiff brought his action of trespass against the defendant for seizing and detaining a package of paper money amounting

to the sum of $321.86. The defendant justified, as collector of State and county revenue for St. Louis county, by authority of law, under a tax warrant or bill against the plaintiff, being for tax upon his income, under the provisions of the act of the General Assembly of the State, approved February 20, 1865, entitled "An act to levy additional State taxes for the years 1865 and 1866."

The defendant's answer alleges the assessment of the tax against the plaintiff, under the law, amounting to $277.34—a tax bill placed in his hands for collection, demand of payment by defendant, plaintiff's refusal to pay, levy of the bill, with interest and costs, upon the money of the plaintiff, and which was the trespass complained of. Plaintiff filed a replication denying specifically the allegations of the answer; denied that the defendant was authorized by law to collect said tax, and averred that the law was illegal.

Upon these pleadings the parties went to trial, and, after hearing evidence, the court gave judgment for plaintiff, and the cause has been appealed to this court.

There is no conflict on any question of fact, and the case has been argued here on three grounds: 1. Whether the tax was regularly assessed and the law complied with by the officers intrusted with that duty. 2. Whether the officer can be rendered liable as a trespasser in a proceeding of this kind. 3. Whether the law is constitutional and valid.

The second section of the act of February, 1865, provided that there should be levied, assessed, and collected, for the year 1865, a tax of three per cent. on the salaries of all officers who were exempt from military duty in consequence of such offices; and two per cent. on the salaries and incomes of all persons, including military officers, whether such incomes were derived from fees or any other source whatever, the same to be paid into the Union military fund: *provided*, that the aforesaid tax and salaries and incomes should be on the excess thereof only over and above the sum of $600. By section 3 it was enacted that the assessment upon all salaries not fixed by law, and upon all incomes, should be based upon the amount of such salary or income received by

the person assessed in the year next preceding the time of assessment, to be verified by the oath of such person; and in case of a refusal to take such oath, or in case of a false statement of the amount of such salary or income by such person, he should be liable to be assessed double the amount of such salary or income, the same to be ascertained by the assessor by the best accessible evidence. Section 5 authorized the auditor of public accounts to issue his instructions to the several assessors, clerks, and collectors, to correct and perfect assessments and tax books in conformity with the provisions of the act.

In accordance with the foregoing authority the auditor issued his instructions for the guidance of assessors, and, among other things, stated that, for the purpose of facilitating the calculation of the income of any person, the assessment must be made upon the year ending with the 31st day of March, 1865. It is contended that, in fixing this time, the auditor acted arbitrarily, exceeded his authority, and directly violated the law. It was upon this point that the judgment in the Circuit Court was given. No opinion was expressed upon the constitutionality of the act. The act directed the auditor to issue his instructions to the several assessors, clerks, and collectors, to correct and perfect assessments and tax books in conformity with its provisions; but it did not authorize him to make law, nor to proceed contrary to established law. What was meant by the clause in the third section which declared that the assessment upon salaries and incomes should be based upon the amount of such salary or income received by the person assessed in the year next preceding the assessments? The word "year," as used in the law, necessarily had reference to either a calendar or a fiscal year. Unless otherwise expressed, the word "year" will always be intended to mean a calendar year; but when applied to matters of revenue, the presumption is in favor of its referring to a fiscal year.

Notwithstanding some ambiguity and clumsiness exhibited in the draft of the bill, there can be no doubt about its just and proper construction. The authority delegated to the auditor was to issue his instructions to the several assessors, clerks, and collectors, to correct and perfect assessments and tax books, and the income was to be based upon the amount received by the person

in the year next preceding the assessment. This was in entire harmony with the then existing revenue law, which provided that the taxes collected for any year should be based on an assessment made for the previous year. The special assessment was not intended to be a new, separate, and independent assessment, but it was to correct and perfect the books in conformity with the provisions of the act, showing plainly that the books which had just prior thereto been made out and completed by the assessors were to be used as a basis, and they were to be corrected by making the proper alterations and additions, so as to include the incomes. The plain meaning and true intent was that the additional tax on incomes should be levied on an assessment for the preceding year, which would coincide with and be founded on the books theretofore made out by the respective officers. The auditor, then, in designating the 31st day of March ensuing after the passage of the law, overstepped his authority, and the action of the assessors in obeying and conforming to his instructions was irregular. The whole assessment was not void, but was simply erroneous as regarded a part of the time. Assuming this proposition to be true, it is next to be considered whether the officer can be held liable in an action of trespass for executing a warrant for the collection of the tax founded on such assessment.

In Milburn v. Gilman, 11 Mo. 64, it was held that a ministerial officer was not liable in trespass for executing a writ issued under the judgment of a court having jurisdiction of the person and subject matter, although the judgment was erroneous.

In Turner v. Franklin, 29 Mo. 285, the action was brought to recover damages for a wrongful levy upon and sale of a horse. The defendant, who was a constable, justified the alleged trespass, setting up that he made the levy and sale under and by virtue of a warrant and sale bill issued by a board of school trustees. The court held that he was protected, Judge Napton saying: "The officer has no right to look into the record of the suit or examine the validity of the judgment. His duty is simple obedience to the mandates of the writ; and if the writ on its face shows the jurisdiction of the court from which it is issued, the officer is protected in executing it."

The question was again considered in the case of The State v.

Shacklett, 37 Mo. 280, and it was there decided that an officer was liable for executing process emanating from a court having no jurisdiction. If jurisdiction did not exist, the whole proceeding would be void, and no person could justify under it. But to have this effect it would be necessary that the writ, process, or warrant should disclose the defect, as it unquestionably did in that case. If the law under which the proceedings in this case were had be not unconstitutional, I do not think the action can be maintained merely because the board of assessors committed an irregularity in the manner of the assessment in carrying out the auditor's directions.

The law is objected to, and it is urged that it violates the thirtieth section of the first article of the constitution, which declares that all property subject to taxation ought to be taxed in proportion to its value. That the tax in question was exceedingly onerous is undoubted; but it may be said that there is nothing very poetical or romantic about tax laws, at best. They are exacting and remorseless, and do not discriminate with any particular nicety as to individual convenience. But mere oppressiveness is no ground for setting them aside or arresting their operation.

Taxes are burdens or charges imposed by the legislative power upon persons or property to raise money for public purposes or to defray the necessary expenses in administering the government. They are contributions levied on individuals for the service of the State. The power to tax rests upon necessity, and is inherent in every sovereignty. The Legislature of every State possesses it, whether particularly specified in the constitution as a grant of power to be exercised or not. In reference to taxation, the constitution is not so much to be regarded a grant of power as a restriction or limitation of power. That taxes should be uniform, and levied in proportion to the value of the property to be taxed, is so manifestly just that it commends itself to universal assent. But, notwithstanding the constitutional provision, there are some kinds of taxes that are not usually assessed according to the value of property, and some which could not be thus assessed; and there is perhaps not a State in this Union, though many of them have in substance the same constitutional provision, which does not levy other taxes than those imposed on property.

Every burden which the State imposes upon its citizens with a view to revenue, to carry on the operations of the State government or for the support of municipal corporations, is a branch of the power of taxation, whether imposed under the name of a tax or some other designation. The license fees which are some times required of those who pursue particular employments are, when imposed for revenue, taxes. Lawyers and physicians may be compelled to pay a license for practicing their professions, for the purpose of revenue; and, although not levied on property, it is still a tax. Stamp duties are taxes. It is customary to require that corporations shall pay a certain sum annually, in proportion to their capital stock paid in, or by some other standard, which is generally fixed for mere convenience. It therefore seems plain that the constitutional requirement that "taxation upon property shall be in proportion to its value" does not include every species of taxation; nor, indeed, would it be possible to place such an interpretation upon it without doing the grossest injustice.

A very large proportion of revenue is derived from other sources than a direct levy on property, and the doctrine contended for would release the former and throw the whole burden upon the latter. In cases of municipal corporations, a different construction has always prevailed. Assessments for the opening, making, improving, or repairing of streets, the draining of swamps, the throwing up of levees, and the like local works, have been usually made upon property with some reference to benefits which it was supposed the property would receive.

The requirement that property shall be taxed in proportion to its value applies as much to these local assessments as any other species of taxes. The local authorities have only such power as is delegated to them by the State, and the State can confer no power against the prohibitions of the constitution.

There are three general classes of direct taxes: capitation, having effect solely upon persons; *ad valorem*, having effect solely upon property; and income, having a mixed effect upon persons and property.

The argument of the plaintiff's counsel proceeds on the hypothesis that every species of tax comes within the constitutional prohibition. This is a mistake. The whole practice of the State

has been different, and it has never been challenged, nor could it be, on legal principles.

The statutes provide for a poll tax, which is in violation of the *ad valorem* rule, and is unequal, yet it is clearly within the constitution. A license is imposed on shows, peddlers, auctioneers, dram-shops, and billiard-tables, all of which taxes are in violation of the *ad valorem* principle, but not therefore unconstitutional. The taxes imposed are uniform as to the particular classes, but not in proportion to the taxes assessed on other property.

The constitution enjoins a uniform rule as to the imposition of taxes on all property, but does not abridge the power of the Legislature to provide for a revenue from other sources. It was intended to make the burdens of government rest on all property alike—to forbid favoritism and prevent inequality. Outside of the constitutional restriction, the Legislature must be the sole judge of the propriety of taxation, and define the sources of revenue as the exigency of the occasion may require. The income tax was uniform and equal as to the classes upon whom it operated; it did not come within the meaning of the term "property" as used and designated in the constitution, and I think it was not in conflict with any provision of that instrument.

The judgment will be reversed and the cause remanded. The other judges concur.