# LUDLOW-SAYLOR WIRE COMPANY, Appellant, v. LOUIS WOLLBRINCK, Assessor.

### In Banc, July 15, 1918.

1. **LEGISLATIVE POWER: How Far Plenary.** The Legislature of a State, unless fettered by either the State or Federal Constitution, is vested, in its representative capacity, with the plenary power of the people, and can legislate at will. In consequence, no legislative act will be adjudged to be repugnant to the Constitution if any reasonable doubt of its constitutionality exists in the judicial mind.

2. **INCOME TAX: In Proportion to Value: Property.** A tax on income is not, in the constitutional sense, a tax on property, and hence the provision of the Constitution requiring that "all property subject to taxation shall be taxed in proportion to value" does not render invalid the Income Tax Law of 1917 which imposes a tax upon "the income of a taxable person." The word "property" in that clause was meant to include only those distinct classes of property which, because of their peculiar nature can be measured in value, become the object of taxation independent of the owner, and are susceptible by proper procedure, to lien or seizure for the enforcement of the tax. Prior to the adoption of the Constitution of 1875 the word "property," by judicial decision, had acquired a fixed and definite meaning preclusive of personal incomes, occupations, privileges and similar sources of revenue, and when used in said Constitution it was not intended to include the usufruct of property, nor the earnings of physical or mental labor.

   *Held,* by FARIS, J., dissenting, with whom WOODSON and WILLIAMS, JJ., concur, that income is property and a tax on incomes is a direct tax on property. Income is always paid in money or kind, that is, in real or personal property from which it accrues. Net income is the original and sole source of all existing private property. The very meaning of the word income is that it is "that gain which proceeds from labor, business, property or capital of any kind;" and this is substantially the definition given, in more elaborate words, in the Income Tax Act of 1917. A tax upon income accruing out of real or personal property is a tax upon such property itself; and an income arising from labor is money, which is property, and hence a tax on such income is a tax on property.

3. ———: ———: **Prior Definition: Adoption.** Words and their context used in a prior constitution and construed by the highest

court, when employed in a later constitution, are presumed to have been adopted with their adjudicated meaning, unless a contrary intention is manifest; and, hence, the word "property" used in the provision of the Constitution of 1875 which requires all property to be taxed in proportion to its value, having been used in similar sections of the two previous constitutions and having been construed by the Supreme Court not to include incomes, was used in the same sense and meaning in which, by judicial construction, it had been previously employed.

Held, by FARIS, J., dissenting, with whom WOODSON, J., concurs, that the Constitution of 1865 contained no provision requiring taxes to "be uniform upon the same class of subjects within the territorial limits of the authority levying the tax," nor did it contain any provision conferring the power of taxation upon the Legislature, but assumed that such power was inherent; and while the Constitution of 1875 also assumed that the power of taxation was inherent in the Legislature, that power was carefully limited and restricted, among other things, by clauses (a) which required the tax to be uniform and (b) inhibiting the enactment of laws exempting any property from taxation except certain property specifically enumerated.

4.   ———: ———: **Income as Intangible Property.** That income is property, and that a taxation of income from land or invested personalty is. in effect, a taxation of the thing producing the income, does not render a statute imposing a tax on incomes violate of the provision of the Constitution which declares that all property shall be taxed in proportion to value. Those considerations do not alter the fact that incomes are distinguishable from the tangible or intangible property yielding them.

Held, by FARIS, J., dissenting, with whom WOODSON and WILLIAMS, JJ., concur, that income is not an intangible entity which the State may tax in a transmutation stage, after its production but pending its fixed investment in or transformation into some other sort of property.

5.   ———: Exemptions. Since the limitations of the Constitution relating to *ad valorem* taxation upon property have reference solely to tangible and specific lands and personalty, the excluded classes of property embracing incomes are not within its regulative provisions specifying what property shall be exempt from taxation.

Held, by FARIS, J., dissenting, with whom WOODSON and WILLIAMS, JJ., concur, that the Income Tax Act, which exempts from the tax incomes of unmarried persons to the extent of $3,000 and of married persons to the extent of $4,000, and imposes the tax upon all sums in excess of said amounts and on the entire income of business corporations, is violative of that clause of the Constitution which says that "all laws ex-

empting property from taxation" other than property used exclusively for religious worship, schools or purposes purely charitable "shall be void," and, besides, in so doing, violates the other clause which says that taxes "shall be uniform upon the same class of subjects."

6. ————: **Uniformity: Classification: Graduation.** The Constitution does not prescribe uniformity of taxation as to any subject-matter of taxation except property in the constitutional sense, which does not embrace incomes. The provision of the Constitution which requires taxes to "be uniform upon the same class of subjects" recognizes the power of the Legislature to classify the subjects falling within its restriction, and only requires that the tax shall be uniform upon the classified persons, or the classified subjects of taxation. Since the Income Tax Act of 1917 classifies persons, corporations and entities, and provides a classification, as to amount, of the portion of the net income of each class of persons, corporations and entities which it makes subject to the tax, and further provides for the payment of an identical rate of taxation by each of the classes made subject to the burden, and requires each person, corporation or entity to pay the same tax which is to be paid by every other person, corporation or entity belonging to the class, it does not violate the constitutional rule of uniformity. The Legislature, by the express constitutional terms, had the power to create the classification of the distinct subjects contained in the act.

*Held*, by FARIS, J., dissenting, with whom WOODSON, J., concurs, that the Income Tax Act is (a) a revenue measure purely; (b) the tax it imposes is not an occupation tax, because, while it taxes incomes derived from labor, trades, business and professions, it also taxes incomes from rents on land and interest from bonds, money loaned and all other income from either real or personal property; (c) it is not a license law, imposing a license tax, for no regulation or the exercise of the police power is involved; (d) it imposes a direct tax, in contradistinction to an indirect tax, because the tax is demandable and collectible from the identical person against whom it is levied; and (e) since income is property it is a direct property tax, or a direct tax upon property. Said act, therefore, violates the constitutional rule that taxes "shall be uniform upon the same class of subjects," because: (1) Incomes of unmarried persons less in amount than $3,000 are not by it taxed at all; (2) incomes of married persons less than $4,000 in amount are not taxed at all; (3) incomes from realty and personalty are, in effect, taxed at the rate of 35 cents on each $100 thereof; (4) incomes from labor and professions are taxed at the rate of 50 cents on the $100 thereof; (5) incomes of business corporations are taxed on the total amounts thereof, without any exemption whatever; and (6)

incomes from numerous alleged educational, fraternal, charitable, benevolent, agricultural and religious corporations and associations, not enumerated in the constitutional exemption list, are wholly exempt from the tax, and therefore (in which WILLIAMS, J., also concurs) these exemptions are violative of the clause of the Constitution which says that "all laws exempting property from taxation, other than the property above enumerated, shall be void," and the exemptions contravene the rule of uniformity prescribed by the Constitution. The word "uniform" used in the Constitution means "conforming to one rule, not varying or variable;" and whether an income tax is a property, or a license, or an occupation tax, the Constitution requires it to be uniform in its burdens upon the same class of subjects, that is to say, upon incomes; and no more permits a graduated tax on incomes than a graduated tax on property.

7. ———: ———: **In Excess of Property Taxes.** Section 32 of the Income Tax Law of 1917 is not unconstitutional because it creates a class consisting of persons whose income taxes exceed those paid on their real and personal property and imposes a tax on their incomes to the extent that their income taxation exceeds their property taxation. Persons belonging to such a class occupy a relation of support to the State reasonably distinguishable from others who pay taxes only on their income, and therefore such a classification does not contravene the constitutional requirement that taxes shall be uniform on the same class of subjects. [FARIS, WOODSON and WILLIAMS, JJ., dissenting.]

8. ———: ———: **U. S. Constitution.** The Income Tax Act of 1917 does not contravene the Fourteenth Amendment of the U. S. Constitution. The State has the freedom of a sovereign both as to the objects and methods of taxation.

Appeal from St. Louis Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Joseph W. Folk* and *Spencer & Donnell* for appellant; *Alexander G. Cochran* of Counsel.

(1) Although the Missouri statute is taken almost bodily from the Federal Act of 1913, the fact that the validity of the Federal Act has been affirmed does not affirm the validity of the Missouri statute. Brushaber v. Railroad, 240 U. S. 1; Pollock v. Farmers' Loan & Trust

Co., 157 U. S. 429, 557; License Tax Cases, 5 Wall. 462, 471; Knowlton v. Moore, 178 U. S. 41; State v. Frear, 148 Wis. 456; Campbell v. Shaw, 11 Hawaii, 112; Alderman v. Wells, 85 S. C. 507.    (2)    The Missouri Income Tax is a tax on property.    (a)    Income is property.  Stratton's Independence v. Howbert, 231 U. S. 415; Opinion of Justices, 220 Mass. 624.  (b) The Supreme Court of the United States has expressly decided that, so far as a tax is levied on income derived from either real estate or personal property as distinguished from income derived from professions and vocations, it is a tax on property, to-wit, a tax on the real estate or personal property from which the income is derived. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 158 U. S. 601; Brushaber v. Railroad, 240 U. S. 1; Knowlton v. Moore, 178 U S. 41; Flint v. Stone Tracy Co., 220 U. S. 107; Opinion of Justices, 220 Mass. 613; State v. Frear, 148 Wis. 456.    (c)    The Missouri law applies, not only to income from professions and vocations, but also to income from real estate and from personal property, and is therefore a tax on property. Sec. 2, p. 525, Laws 1917; Sec. 7, p. 528, Laws 1917. (3)    Inasmuch as the Missouri income tax is a tax on property, the statute is unconstitutional because it violates Section 4 of Article 10 of the Constitution of Missouri, which provides that ''all property subject to taxation shall be taxed in proportion to its value.'' Life Association v. Assessor, 49 Mo. 512; Hamilton v. County Court, 15 Mo. 3; State v. Bengsch, 170 Mo. 81; Parker v. Insurance Co., 42 La. Ann. 428; State v. O'Brien, 89 Mo. 631; Sec. 30, Declaration of Rights, Constitution of 1865; Constitutional Debates of Missouri, 1875, proceedings of 56th day, pp. 14, 15, 16, 24, 41, 45, 55, 58, 86, 87, 93, 142, 149, 178, 179, 184, 186, 187, 203, 204, 217; 57th day, pp. 27, 32; Sec. 8, p. 529, Laws 1917; Sec. 32, p. 538, Laws 1917; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 158 U. S. 601; State v. Frear, 148 Wis. 45, 26 Am & Eng. Ann. Cas. 1147; Constitution of Wisconsin, Art. 8.    (4)    Inasmuch as the Missouri income tax is a tax upon property, the

statute is unconstitutional because it violates Sections 6 and 7 of Article 10 of the Constitution of Missouri, which strictly limit the power of the Legislature to exempt property from taxation, and provide that "all laws exempting property from taxation other than the property above enumerated shall be void." State v. Bengsch, 170 Mo. 81; State v. Casey, 210 Mo. 235. (5) The Legislature was without power to pass the Income Tax Law, which as above stated, is a tax on property, because it had previously provided for a 15-cent levy per $100, which exhausted its constitutional authority. Sec. 8, Art. 10, Mo. Constitution: Sec. 11415, R. S. 1909; Pollock v. Farmers' Trust Co., 157 , U. S. 429, 158 U. S. 601. (6) Whether the Missouri income tax is technically a tax on property or not, it is violative of the Constitution of Missouri and therefore void because it lacks uniformity within the meaning of Section 3 of Article 10 of the Constitution. Constitutional Debates of Missouri, 1875: 56th day, pp. 6, 132, 178, 184, 185, 217, 231, 285, 286, 312, 313, 322; 57th day, pp. 2, 27, 32; Constitution of 1865, Section 30, Declaration of Rights; St. Louis v. Speigel, 75 Mo. 145; Kansas City v. Whipple, 136 Mo. 475; City of St. Louis v. Spiegel, 90 Mo. 587; Kansas City v. Grush, 151 Mo. 128; State ex rel. v. Ashbrook, 154 Mo. 375; State ex rel. v. Switzler, 143 Mo. 287; Judson on Taxation in Missouri, pp. 128, 131; Sec. 1, Art. 9, Constitution of Pennsylvania; In re Cope's Estate, 191 Pa. 21; Sec. 6, Laws 1917, p. 527; State v. Distilling Company, 236 Mo. 219; State v. Bixman, 162 Mo. 1; Gray on Limitations of Taxing Power, sec. 1608; Welton v. Missouri, 91 U. S. 275; Brown v. Maryland, 12 Wheat. 425; Opinion of Justice Field in Pollock v. Farmers' Loan & Trust Company, 157 U. S., l. c. 607 and 596; Sec. 32, Laws 1917, 538; Opinion of Justice Field in Pollock v. Farmers' Loan & Trust Company, 157 U. S. l. c. 595 and 597; State v. Miksicek, 225 Mo. 561; State ex rel. v. Plank Road Company, 11 Wis., 40; Alderman v. Wells, 85 S. C. 507, 517; St. Louis v. U. Rys. Co., 263 Mo. 449; State v. Julo, 129 Mo. 177;

Campbell v. Shaw, 11 Hawaii, 112; Peacock v. Pratt, 121
Fed. 772.    (7)    Whether it is technically a tax on
property or not the Missouri Income Tax Law is void
for the reason that the act surrenders or suspends the
power to tax corporations.    Sec. 2, Art. 10, Mo. Con-
stitution.    (8) Inasmuch as the Income Tax Law of
Missouri is a tax on receipts from interstate com-
merce, it is void as a tax on interstate commerce. Leloup
v. Port of Mobile, 127 U. S. 640; Galveston Ry. Co. v.
Texas, 210 U. S. 217; Crew Levick Co. v. Pennsylvania,
245 U. S. 292; Oklahoma v. Wells Fargo Co., 223 U. S.
298; Minnesota Rate Cases, 230 U. S. 400; Philadelphia
S. S. Co. v. Pennsylvania, 122 U. S. 326; Kansas City
Ry. v. Kansas, 240 U. S. 231; Lowney v. Crane Co.,
245 U. S. 178; Cooley on Taxation (3 Ed.), p. 155;
Black on Income Taxes (2 Ed.), p. 251; U. S. Express
Co. v. Minnesota, 223 U. S. 344; Atlantic Tel. v.
Philadelphia, 190 U. S. 1; Baltic Mining Co. v. Massa-
chusetts, 231 U. S. 83; St. Louis v. United Railways
Co., 263 Mo. 387; Sections 1 and 7, Laws 1917, pp.
524, 528; Express Co. v. City of Joseph, 66 Mo. 675;
Erie Railroad Co. v. Pennsylvania, 158 U. S. 431;
State Freight Tax Case, 15 Wall. 232.

*Frank W. McAllister,* Attorney-General, *John T.
Gose,* Assistant Attorney-General, *Charles H. Daues,
H. A. Hamilton, Frederick N. Judson,* of Counsel, for
respondent.

(1)    The State Income Tax is not a property tax
in the constitutional sense and the provisions of the
Constitution relate only to *ad valorem* property taxation.
Glasgow v. Rowse, 43 Mo. 479; Black on Income Taxes,
(3 Ed.), p. 2, sec. 36; Cooley on Taxation, (3 Ed.), p.
10; 37 Cyc. 759-766; Waring v. Savannah, 60 Ga. 93;
Codman v. American Piano Co., 118 N. E. (Mass.) 344;
Woodruff v. Oswego Starch Co., 74 N. Y. Supp. 961,
77 N. Y. 23; Drexel v. Commonwealth, 46 Pa. St. 31;
Burlington v. Insurance Co., 31 Ia. 103; Peacock v.
Pratt, 121 Fed. 772; Alderman v. Wells, 86 S. C. 507;
State ex rel. Bolens v. Frear, 148 Wis. 456, L. R. A.

1915-B, 569; Levi v. Louisville, 97 Ky. 394; Am. Express
Co. v. St. Joseph, 66 Mo. 675. (2) The State taxing
power is inherent and incident to sovereignty, and is
not a constitutional grant. Glasgow v. Rowse, 43 Mo.
479; American Express Co. v. St. Joseph, 66 Mo. 675;
Express Co. v. Seibert, 44 Fed. 310, 142 U. S. 339;
Hannibal & St. Joe Railroad Co. v. Board of Equali-
zation, 69 Mo. 307; State ex rel. v. Burton, 266 Mo. 711;
Mutual Reserve Life Assn. v. Augusta, 109 Ga. 73;
Scottish Union Ins. Co. v..Herriott, 109 Ga. 606; State
v. Philadelphia Railroad Co., 45 Md. 61; State v. North
Central Railroad Co., 44 Md. 131, 37 Cyc. 732; Parker
v. Insurance Co., 42 La. Ann. 429; Kansas City v.
Whipple, 136 Mo. 435; R. S. 1909, secs. 10471-10480; City
of St. Louis v. Sternberg, 69 Mo. 301; City of Aurora
v. McGannon, 138 Mo. 438; City of St. Louis v. Basko-
witz, 201 S. W. 870; City of St. Louis v. United Railways
Co., 263 Mo. 439; In re Sanford, 263 Mo. 634; City
of St. Louis v. McCann, 57 Mo. 307; City of St. Joseph
v. Ernst, 94 Mo. 360; City of Richmond v. Creel, 253
Mo. 256. (3) "Direct Tax" and property tax dis-
tinguished. Glasgow v. Rowse, 43 Mo. 479; 37 Cyc.
714-759-766; Pingree v. Auditor General, 120 Mich. 95;
Drexel v. Commonwealth, 47 Pa. 31; New Orleans v.
Fourchy, 30 La. 910; Levi v. Louisville, 97 Ky. 394;
Cooley on Taxation (3 Ed.), p. 10. (4) Federal and
State taxation distinguished, and the rulings as to Federal
taxation immaterial. Income Tax Cases, 157 U. S. 429,
158 U. S. 601; Knowlton v. Moore, 178 U. S. 41;
Flint v. Stone Tracy Co., 220 U. S. 107; State ex rel.
Bolens v. Frear, 148 Wis. 456. (5) The decision in
Glasgow v. Rowse sustaining the constitutionality of
the income tax in Missouri is decisive of the case at bar.
This case has been repeatedly cited and followed as a
leading case both in this State and elswhere. Glasgow
v. Rowse, 43 Mo. 479; North Missouri R. Co. v. Maguire,
49 Mo. 500; American Express Co. v. City of St. Joseph,
supra; City of St. Louis v. Sternberg, 69 Mo. 301; City
of St. Louis v. Spiegel, 75 Mo. 146; City of St. Louis v.
Bowler, 94 Mo. 630; City of St. Joseph v. Ernst, 95 Mo.

367; Kansas City v. Whipple, 136 Mo. 479; City of Aurora v. McGannon, 138 Mo. 438; State v. Bengsch, 170 Mo. 109; In re Sanford, 236 Mo. 695; City of St. Louis v. United Railways Co., 236 Mo. 449; State ex rel. v. Burton, 266 Mo. 719; St. Louis v. Green, 7 Mo. App. 473; Kansas City v. Richardson, 90 Mo. App. 456; City of Fayetteville v. Carter, 6 L. R. A. (Ark.) 509; Short v. Maryland, 80 Md. 392, 29 L. R. A. 404; Cooley on Taxation (3 Ed.), pp. 310-364-512; 37 Cyc. 732-759; Black on Income Taxes (3 Ed.), pp. 6 and 12.   (6) Incidental duplicate taxation no legal objection to the income tax. 1 Desty on Taxation, p. 203; Cooley on Taxation (3 Ed.), sec. 387 et seq.; 37 Cyc. 579; St. Louis Mut. Life Ins. Co. v. Board of Assessors, 56 Mo. 506; Woodruff v. Oswego Starch Co., 177 N. Y. 28; City of St. Louis v. Baskowitz, 201 S. W. 870; Income Tax Act of 1865.   (7) Income Taxation is not novel, but has been enforced in all parts of the world for many years, and is now in force in many states of this country, and in foreign countries. State ex rel. Bolens v. Frear, 148 Wis. 456.   (8) State income taxation is not dependent upon constitutional grant in the states where in force. Commonwealth v. Werth, 116 Va. 604.   (9) Supplemental and substitutionary state income taxation must be distinguished. State ex rel. Bolens v. Frear, 148 Wis. 456; Opinion of Justices, 190 Mass. 607, 220 Mass. 624; Codman v. American Piano Co., 119 N. E. (Mass.) 344. (10) Classification and avoidance of duplicate taxation involves the exercise of legislative discretion. State ex rel. Bolens v. Frear, 148 Wis. 456; Pacific Express Co. v. Seibert, 142 U. S. 339.   (11) There is no lack of uniformity in the act, and its classification is in accord with the necessary and universal incidents of this form of taxation. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283; Clark v. Titusville, 184 U. S. 329; Bells Gap R. R. Co. v. Pennsylvania, 134 U. S. 233; Merchants Bank v. Pennsylvania, 167 U. S. 461; Simpson v. Hopkins, 82 Md. 478; Commissioners of Pa. v. Canal Co., 123 Pa. 594; Aldermen v. Wells, 85 S. C. 507; State ex rel. Bolens v. Frear, 148 Wis. 456; City of Aurora v. Mc-

Gannon, 138 Mo. l. c. 49. (12) There is no basis whatever for the charge of discrimination between objects of the same class. The debates of members in constitutional conventions and legislative assemblies are inadmissible in determining the meaning of language adopted. United States v. Union Pacific R. Co., 91 U. S. 78; Freight Association Case, 166 U. S. 318; As to the construction of Section 3 of Article 10 of Constitution, see St. Louis v. United Railways Co., 263 Mo. 449; Kansas City v. Richardson, 90 Mo. App. 455; St. Louis v. Green, 7 Mo. App. 468, 70 Mo. 562; Glasgow v. Rowse, 43 Mo. 489; St. Louis v. Sternberg, 69 Mo. 302. (13) The provisions of Section 32 are reasonable and in accord with the precedents of other states. (14) There is no basis whatever for the contention of interference with interstate commerce. The receipts of business are not taxed as such, but after they become part of the income whether of residents or non-residents. No case is cited or can be found where a general income tax has been adjudged to interfere with interstate commerce. Philadelphia Steamship Co. v. Pennsylvania, 122 U. S. 226; United States Glue Co. v. Oak Creek, 161 Wis. 211; Peck v. Lowe, 234 Fed. 125; 12 Corpus Juris, 114; Flint v. Stone Tracy Co., 220 U. S. 107; American Mfg. Co. v. St. Louis, 270 Mo. 40. (15) There is no violation of due process of law, or equal protection of the laws under the Fourteenth Amendment. Davidson v. New Orleans, 96 U. S. 97; Bells Gap Railroad Co. v. Pennsylvania, 134 U. S. 233; Michigan Central Railroad Co. v. Powers, 201 U. S. 245; Pacific Express Co. v. Seibert, 142 U. S. 339.

BOND, C. J.—I. Plaintiff, a business corporation, during the last half of the calendar year of 1917, earned a net income subject to taxation under an act of the Legislature approved April 12, 1917 (Laws 1917, p. 524, et seq.). Being cited to make a return of its said income, it refused, and brought this suit to enjoin the enforcement of said act as being violative of the State and Federal constitutions, making the assessor of the city of St. Louis a party defendant.

A general demurrer to the petition was sustained; whereupon, plaintiff not pleading further, a judgment dismissing its petition was rendered, from which this appeal was prosecuted.

II.  The Federal Act of 1913, taxing incomes, was sustained after an amendment of the Constitution of the United States which excluded "taxes on incomes," however derived, from the effect of a prior ruling of the Supreme Court of the United States holding that such taxes should not be laid without apportionment among the several states.    [Brushaber v. Un. Pac. Ry., 240 U. S. 17 et seq.; Pollock v. Farmers' Loan & Trust Company, 157 U. S. 1. c. 581; s. c. 158 U. S. 1. c. 637.] The Sixteenth Amendment of the Constitution of the United States, permitting Congress to levy income taxes without apportionment, was a reversal, by organic law, of the ruling of the Supreme Court of the United States to a contrary effect, which had only been made in the first instance by a bare majority of the justices of that court against the weight of the dissent of the present Chief Justice and three associate Justices.  The Federal Income Tax, thus upheld, is the copy from which the various provisions of the act of the Missouri Legislature were "almost bodily" taken.

The decision of the Supreme Court of the United States, that the Act of Congress taxing incomes was (after the passage of the Sixteenth Amendment of the Federal Constitution) constitutional, is not an authority touching the contention, that the Act of the Missouri Legislature now under review is in violation of the Constitution of the State; since the provisions of the two Constitutions with reference to taxation are not the same.  But that decision of the Supreme Court of the United States is persuasive authority that the various provisions of discrimination and classification common to the two acts are not in and of themselves obnoxious to the "due process" clause of the Federal Constitution, since it was held that the Federal act did not offend that safeguard in the Federal Constitution.

**Due Process.**

The pivotal points presented by this appeal are, therefore, whether the Act of the Missouri Legislature had overridden the Constitution of 'the State in the various respects claimed on behalf of plaintiff below and appellant here.

Prefatory to a discussion of these, it is well to note the true function of the Legislature as the representative of the people, in the enactment of laws for their government, and its true relation to the Constitution of the State. That it is vested, in its representative capacity, with all the primary power of the people, unless fettered by the Constitution, is a proposition which is the corner stone of our State government, and · one whose stability is unquestionable, and which has been enunciated by this court whenever the relation of the Legislature to the Constitution was held in judgment. This greater power and amplitude of action is a characteristic distinction between the Legislature, having full authority as the direct representative of the primary power of the people to .enact any and all laws when not restrained by the Constitution, and the Congress of the United States, whose authority to act is confined to the terms of the grant thereof contained in the Federal Constitution.

*Legislative Power.*

The government of this State is a representative republic in which all the power to make laws in the name and with the authority of the its constituent elements— its citizens *en masse*—is lodged in the temporary Legislature, subject only to the restraining clauses of the constitutions of the State and Nation. Upon this principle is founded the inherent power of that body to legislate at will on any subject and to any extent when, in so doing, neither the State nor the national Constitution is overridden. [U. S. Glue Co. v. Town of Oak Creek, 38 U. S. 499; Pitman v. Drabelle, 267 Mo. l. c. 84; Harris v. Bond Co., 244 Mo. l. c. 687; McGrew ·v. Paving Co., 247 Mo. l. c. 570; Ex parte Roberts, 166 ·Mo. l. c. 212; State ex rel. v. Pub. Serv. Com., 270 Mo. l. c. 559.]

As an obvious sequence of the power thus vested in the Legislature, the rule is established, in dealing

with constitutional restrictions, that they shall not be held to apply, if any reasonable doubt as to their repugnancy to the act under review, can exist in the judicial mind. Under the guidance of these principles, it becomes necessary to inquire in what manner and to what extent the Constitution has restrained the power of the Legislature in the vital matter of providing by taxation for the support of the government of the State. The particular provision of the Constitution relied on to support the errors assigned on this appeal are Sections 2, 3, 4, 6, 7, and 8 of Article 10 of the Constitution of 1875.

The appellant contends that the act under review (Laws 1917, p. 524, et seq.) in taxing incomes, thereby imposed a tax on property in contravention of Section 4, supra, in that by the terms of the act the tax was not laid in proportion to value.

In Proportion to Value.

This precise point, under a substantially similar provision of the Constitution then in existence, was presented for adjudication in Glasgow v. Rowse, 43 Mo. 479, and thus dealt with by WAGNER, J., in an opinion concurred in by BLISS and CURRIER, JJ. In disposing of it the court said:

"The power to tax rests upon necessity, and is inherent in every sovereignty. The Legislature of every State possesses it, whether particularly specified in the Constitution as a grant of power to be exercised or not. In reference to taxation, the Constitution is not so much to be regarded a grant of power as a restriction or limitation of power. . . .

"There are three general classes of direct taxes: capitation, having effect solely upon persons; *ad valorem,* having effect solely upon property; and income, having a mixed effect upon persons and property.

"The argument of the plaintiff's counsel proceeds on the hypothesis that every species of tax comes within the constitutional prohibition. This is a mistake. The whole practice of the State has been different, and it has never been challenged, nor could it be, on legal principles.

"The statutes provide for a poll tax, which is in violation of the *ad valorem* rule, and is unequal, yet it is clearly within the Constitution. A license is imposed on shows, peddlers, auctioneers, dram-shops and billiard tables, all of which taxes are in violation of the *ad valorem* principle, but not therefore unconstitutional. The taxes imposed are uniform as to the particular classes, but not in proportion to the taxes assessed on other property.

"The Constitution enjoins a uniform rule as to the imposition of taxes on all property, but does not abridge the power of the Legislature to provide for a revenue from other sources. It was intended to make the burdens of government rest on all property alike—to forbid favoritism and prevent inequality. Outside of the constitutional restriction, the Legislature must be the sole judge of the propriety of taxation, and define the sources of revenue as the exigency of the occasion may require. The income tax was uniform and equal as to the classes upon whom it operated; it did not come within the meaning of the term 'property' as used and designated in the Constitution, and I think it was not in conflict with any provision of that instrument." [Glasgow v. Rowse, 43 Mo. l. c. 489, 490, 491.]

The reasoning and conclusion of the court in the above case has never been disapproved in this State and has been extensively cited and approved in other states and in text-books, as shown in the brief of respondent. It is predicated upon a distinction made by the court as to the application of the term "property" used in the Constitution. In law and in the broadest sense "property" means "a thing owned," and is, therefore, applicable to whatever is the subject of legal ownership. It is divisible into different species of property, including physical things, such as lands, goods, money; intangible things, such as franchises, patent rights, copyrights, trade-marks, trade names, business goodwill, rights of action, etc. In short it embraces anything and everything which may belong to a man and in the ownership of which he has a right to be

protected by law. The court held, in effect, that in directing, as the Constitution does, that taxes on property should be levied according to value, reference was intended to be made to other species of property than that which a person has in his income; that the Constitution did not abridge the power of the Legislature to provide revenue by a taxation of income; that its command was directed to other and distinct classes of property which (on account of their peculiar nature *could be measured in value*) become the object of taxation *independent of the owner*, and are susceptible, by proper procedure, to lien or seizure for the enforcement of the tax. The court held that it was property having such a nature and characteristics, and not the mere usufruct of such property, nor the earnings of physical or mental labor, which was referred to in the clause under review and intended thereby to be subjected to taxation according to its value. [City of St. Louis v. Speigel, 75 Mo. l. c. 146.] In support of this reasoning it is said in Black on Income Taxation (3 Ed.), p. 41, sec. 36:

"A tax on incomes is not a tax on property, and a tax on property does not embrace incomes. . . . For the same reason a tax laid on incomes is different from a tax laid on the property out of which the income arises, and although a statute may tax land at a different rate from that imposed on incomes, it is not therefore in conflict with a constitutional provision *that taxation on all species of property* must be uniform." (Italics ours.)

The ruling of the court is also in keeping with what is said in 37 Cyc., p. 759, 6:

"A tax may be levied on income derived from property in the shape of rent or otherwise, although the property yielding the income is also subjected to taxation; and this does not violate the rule against double taxation, because *the two interests or species* of property are distinct and severable." (Italics ours.)

In consonance with these distinctions the court held, in Glasgow v. Rowse (43 Mo. supra) that the term "property" in the Constitution did not apply to that species of ownership enjoined by the possessor of an income, and hence the Legislature was no more restricted in taxing incomes than it or its subordinate agencies are restricted in laying occupation and other taxes relating to the activities or personalty of the individual taxed; indeed, the fact that the act in question is a tax upon the *owner* of an income is distinctly recognized and stated in Section 2 of the act, which uses these words; "the net income of a *taxable* person" (italics ours) defining it. It may be that the construction of the word "property" which has appeared as definitive of the subject of *ad valorem* taxation in all of the three constitutions of this State when originally made, was not in full accord with the broadest possible meaning of that term, in that literally it might include every species of property. But that was not a compellable view, and the restricted construction (which excluded from its purview personal earnings and incomes) had been affixed to this term six years prior to the adoption of the Constitution of 1875 and the principle of that construction has since been applied in sustaining taxes of a similar nature, although levied without proportioning the taxation to the value of the thing taxed. Instances are: Express Co. v. City of St. Joseph, 66 Mo. 675, which was a case of the taxation of the gross receipts of an express company; Kansas City v. Whipple, 136 Mo. l. c. 478, in which the same principle covers poll taxes; City of St. Louis v. Sternberg, 69 Mo. l. c. 301, and City of Aurora v. McGannon, 138 Mo. 38, license and occupation taxes; City of St. Louis v. McCann, 157 Mo. l. c. 301, real estate agents, and City of Richmond v. Creel, 253 Mo. l. c. 257, trade and professional taxes. This distinction has been clearly noted by WALKER, J., in a recent case. [See St. Louis v. United Rys. Co., 263 Mo. l. c. 449.]

It is apparent, therefore, that when the Constitution of 1875 was adopted, the word "property" as the basis

for taxation, proportioned to value, had acquired a fixed and definite meaning preclusive of personal incomes, occupations, privileges and similar sources of revenue. The rule is firmly settled that the adoption in a later constitution of the words and context of another, which had been construed by a court of last resort, is presumed (in the absence of a contrary intention) to have been done to give the adopted words their adjudicated meaning. [6 R. C. L., p. 54, sec. 49, and cases cited.] It was the evident intent, therefore, of the Constitution of 1875, Section 4, supra, to use the word "property" in the same sense and meaning which it had been held to carry when used in a similar section in two prior constitutions. [Jenkins v. Ewin, 8 Heisk. 456; 12 Corpus Juris., 706, and cases cited under note ten; Sanders v. Anchor Line, 97 Mo. l. c. 30, 31; Ex parte Durbin, 102 Mo. l. c. 103.]

*Adoption of Construed Words.*

III. The cases from other jurisdictions cited in appellant's brief, holding that income is property and that a taxation of income from land or invested personalty, is, *in effect,* a taxation of the thing producing the income, do not militate in any sense against the conclusions expressed herein. That income is property because it is an ownable thing, is a matter of simple apprehension which has been affirmed under the definition of property above stated. That it is, "in effect," a taxation of the labor or capital which produced it, may be conceded, since by reaction it affects the value of the thing or things from which it is derived. But none of these considerations alter the fact that incomes are distinguishable from the tangible or intangible property yielding them, nor do they affect the established law in Missouri, that incomes are thus connoted by our Constitution and decisions. These recognize incomes as one of the classes entering into the concept of property not required to be taxed in proportion to value, and, therefore, not falling within the designation of property which the Legislature is forbidden to tax except in that way; and (as a conse-

*Income and Property.*

quence of the plenary power of that body to raise revenue at will, absent a constitutional prohibition) falling wholly within the scope of the authority of the Legislature to impose taxes for the sustenance of the State without measuring its impose by the value of the thing taxed. Taxation of incomes,. therefore, does not offend Section 4 of Article 10 of the Constitution of 1875.

IV. From what has been said as to the division of "property" into its component classes and the limitation of that term under the Constitution to tangible and specific lands and personalty as the basis for taxation *ad valorem,* it follows that the excluded classes of property embracing incomes, etc., are not within the regulative provisions of the Constitution (Secs. 6, 7, Art. 10) specifying what "property" shall be exempt from taxation.

Exemptions.

Neither are the revenues proposed by the present act measured by Section 8 of Article 10, since that provision also relates to the limitation "of the tax on property," which term, as has been shown, whenever used in the clauses of the Constitution, does not embrace incomes. Indeed, the only contention of the learned brief for appellant as to the application of Sections 6, 7, and 8 of Article 10, is predicated upon the theory (which has been shown to be untenable under the settled construction of that term in this State) that the word "property" does embrace incomes.

Rates.

V. It is, however, further insisted by appellant that "whether the Missouri income tax is technically a tax on property or not," it is a void enactment because not uniform as required by Section 3 of Article 10 of the Constitution. Realizing the *cul de sac* into which that position runs on account of the clear, distinct and emphatic statement of the rule by this court In Banc that Section 3 of Article 10 of the Constitution does not proscribe uniformity as to any other subject-matters of taxation, except property in the constitutional sense affixed to

Uniformity of Taxes.

that term (St. Louis v. United Rys., 263 Mo. 1. c. 449), appellant insists that the ruling in question is *obiter* and error.

Without for a moment conceding this attack upon the ruling in question to be sound or correct, and for the argument only, taking it for granted that Section 3 of Article 10 of the Constitution is applicable to any and all of the subjects of taxation which the Legislature or its agencies may employ for the purpose of raising revenue, still, there is no merit whatever in the contention of appellant that the section in question is violated by the provisions of the Income Tax Law of Missouri now under review.

The Constitution (Section 3, Art. 10) provides "taxes may be levied and collected for public purposes, only. They shall be uniform upon the *same class of subjects*," etc. By necessary implication this constitutional provision recognizes the power of the Legislature to classify the subjects falling within its restriction, and only requires that the tax shall be uniform upon the classified persons, or the classified subjects of taxation. In the Missouri act under review, persons, corporations and entities are distinguished and classified. The act also provides a classification as to the amount, of the portion of the net income of each class of persons, corporations or entities, which is subject to taxation therein. The act further provides for the payment of an identical rate of taxation upon each of the classifications of income subject to its burden, and that each person, corporation or entity shall pay the same tax which is paid by every other person, corporation or entity belonging to the same class. That the Legislature had the power to create such classification is implied by the *very terms* of the provision of the Constitution (Sec. 3, Art 10) that taxes thereunder shall be uniform upon the same class of subjects. Necessarily this language would be meaningless unless interpreted to empower the Legislature to create distinct classes of "subjects." In the act under review it is not even contended (conceding the power to levy the tax) that

the provisions distinguishing the persons and grading the tax to be paid in accordance with such distinctions, are not founded in reason, in justice and for the utility of the public—the true criteria which should govern all legislative action. Indeed the essential justice of the various classifications of the act seems to be evident. Practically identical gradations of tax, classifications of persons, etc., are contained in the Federal act which is the pattern of the Missouri law, and are set forth in the discriminations found to exist in the acts of many other states of the Union and the most enlightened nations of the world.

Independently, therefore, of the application of the rule, which would exscind the subject-matter of the Missouri act from the control of Section 3 of Article 10 of the Constitution (St. Louis v. U. Rys. Co., 263 Mo., supra), the classifications and gradations of incomes subject to tax under the act under review were within the proper cognizance of the Legislature, which had unrestricted power to enact it under the settled construction of the relevant clauses of the Constitution by the Supreme Court of this State.

Neither can we assent to the contention of appellant that Section 32 of the act in question is violative of Section 3 of Article 10 of the Constitution. The Legislature might well create a class consisting of persons whose income taxes exceeded those paid on their real and personal property; for the reason that persons belonging to such a class occupy a relation of support to the State, reasonably distinguishable from others who pay taxes only on their incomes. Hence, by taxing the former to the extent their income taxation exceeded their property taxation, the Legislature intended to distribute with greater equality and justice the different burdens imposed on the whole body of taxpayers and designed also to encourage and foster the payment of taxes on tangible and specific property by assigning such taxpayers to a distinct class in the imposition of income taxes, that being a subject of taxation within the control of the Legislature, except that, in any event, a tax on

income must bear equally upon every person belonging to the same class. This equality of burden, among the members of any of the different classes recognized in the act, applies to those forming the class designated in Section 32 of the Act under review. And that section is, therefore, not obnoxious to Section 3, Article 10 of the Constitution.

Neither had the Legislature surrendered the power to tax the property of corporations by the act under review. The thing taxed in this act is not, as has been shown, the "property" of a corporation in the adjudicated meaning of that word when employed in the Constitution.

Nor is there any logical basis for the further contention of appellant that the Income Tax Law contravenes the Fourteenth Amendment of the Constitution of the United States. In speaking of the relationship of the Nation to the States, as to the exercise of the taxing power by the latter, the Supreme Court of the United States said:

"There is no general supervision on the part of the Nation over State taxation; and in respect to the latter, the State has, speaking generally, the freedom of a sovereign both as to objects and methods." [Michigan Central Railroad Co. v. Powers, 201 U. S. 245; Bell's Gap Railroad v. Pennsylvania, 134 U. S. 232; Davidson v. New Orleans, 96 U. S. 97; State ex rel. Bolens v. Frear, 148 Wis. 456; Alderman v. Wells, 85 S. C. 507.]

VI. The conclusion reached in this case is fraught with the greatest significance and import to the people of the State whose representatives, in the enactment in question, achieved a marked advance in the improvement of the fiscal policy, upon the proper adaptation of which depends the entire wellbeing and support of the commonwealth, the growth and development of its industrial system and the sustenance and stability of the State government, as well as the proper and wholesome functioning of its varied organs and departments. We have approached

*Wise Statute.*

the question with a full sense of its momentous import and our duty to resolve, if reasonably possible, every doubt in favor of the validity of the law designed for the betterment of the people and to provide sustenance for the conduct of the government. That we have been able to reach this result compatibly with the restraints of the Constitution is a matter of profound satisfaction. Our organic law was framed in the nineteenth century, and was necessarily narrowed in its perspective by the environing conditions of contemporary life. The framers of that instrument were not prophets and were unable, therefore, to forecast future conditions which must arise "in the shifting attitude of human affairs" in the growth of the world, or from new demands of social justice under the complex conditions of a more refined and developed civilization.

The measure which we have been considering is an embodiment in concrete form of the postulate of social science that the revenues of a State should flow equally from all its varied sources of wealth, forming an ample reservoir of power for governmental action and affording the means essential to accomplish the great ends for which the commonwealth was established, relating to the care and education of its youth, the nceessities of internal improvement, the support of its charities, the conservation of the morals and property of its people and the due enforcement of its laws. In the act under review the Legislature performed, with rare intelligence and fidelity to the trust imposed on them by the people, an act of prescient statesmanship, without contravening any of the limitations imposed on their action by the Constitution of the State. We therefore hold the act to be valid.

The judgment of the trial court is, therefore affirmed.

It is so ordered. *Walker, Blair* and *Graves, JJ.,* concur; *Blair, J.,* in paragraphs 1, 2, 3, 4, 5 and result; *Faris, J.,* dissents, in separate opinion, in which *Woodson, J.,* joins; *Williams, J.,* dissents, and concurs in portions of the dissenting opinion of *Faris, J.*

FARIS, J. (dissenting.)—I cannot in the face of the Constitution agree to either what is said in the majority opinion or to the result reached therein. The facts are set forth meagerly. I purpose first to say what the case is about and then to express my views about it.

This is a suit by injunction begun by plaintiff, a Missouri corporation, suing for itself and all others similarly situated, to restrain and enjoin the defendant, as Assessor of the City of St. Louis, from assessing plaintiff for income taxes, and from compelling plaintiff to make a return, under the provisions of an act entitled: "An Act Providing for the Assessment, Levying, Collecting and Paying of Income Tax," approved April 12, 1917. To the petition of plaintiff the defendant interposed and the court *nisi* sustained a general demurrer. Plaintiff refused to plead further, final judgment was entered, and plaintiff appealed.

The case involves but the single question of the constitutionality *vel non* of the act above mentioned, which for brevity I shall hereinafter refer to as the "Income Tax Act." The grounds whereon plaintiff bottoms its attack upon the constitutional validity of this act are thus set forth by it in the petition held bad below, viz.:

"That said act of the Legislature of the State of Missouri is unconstitutional, null and void, in that it violates the Constitution of the State of Missouri and particularly the following provisions thereof, to-wit:

"(a) Section 3 of Article 10 whereby it is provided that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

"(b) Section 4 of Article 10, whereby it is provided that all property subject to taxation shall be taxed in proportion to its value.

"(c) Section 6 and Section 7 of Article 10 whereby all laws exempting property from taxation, except as therein enumerated, shall be void.

"(d) Section 8 of Article 10, wherein limitation is placed upon state tax on property.

"(e) Section 2 of Article 10, whereby the power to tax corporations and corporate property shall not be surrendered or suspended by act of the General Assembly.

"(f) Section 53 of Article 4, wherein the General Assembly is prohibited from passing any special laws exempting property from taxation.

"That said act is unconstitutional and void in that it violates the Constitution of the United States, and particularly the following provisions thereof, to-wit:

"(a) Section 8 of Article 1, which vests in Congress the power to regulate commerce with foreign nations and among the several States.

"(b) Article 14 of the Amendments thereto, which provides that no State shall deprive any person of liberty or property without due precess of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The provisions of the Income Tax Act, so far as they will become pertinent in making clear the points I find it necessary to discuss, are, in brief substance, these:

Section 1 provides for the levying of a tax of one-half of one per cent for the last half of the year 1917, and for the whole of all subsequent years, upon the net income of all citizens of the State, and a like tax upon the incomes of non-residents, derived from property within the State.

Section 2 defines net income, but since I shall have occasion to quote this definition in full in the course of the opinion, I do not need here to take up space with it. This section also provides for the levying of this tax upon the estates of deceased persons in course of administration. There is likewise a provision in Section 2 for ascertaining the increment of value of all property bought before the act takes effect, as a basis of fixing the "gain" thereof, that is to say, the "income" therefrom.

Section 3 specifically defines the sources of certain taxable incomes, with a view to guard against fraudulent practices and evasive subterfuges. Section 4 exempts

insurance paid to beneficiaries, returns of premiums paid to the assured, principal of gifts, and devises, interest accruing 'from the obligations of the United States, of the State or of any political subdivision thereof, and the compensation paid to public officers for public services, ''where the taxation thereof would be repugnant to the Constitution.''

Section 5 provides for deductions, allowed to be made in figuring net income for taxation, and in the main follows the Federal Income Tax Act in this behalf. Deductions are allowed from gross income for the necessary expenses of carrying on any business in which the taxpayer is engaged and from which the income is derived, except ''personal, living or family expenses;'' for all interest paid on debts, within the taxing period; for all taxes paid, except benefit assessments; for all losses sustained in business, or by fire, flood, theft, storm or sea, unless such losses are compensated by insurance; for losses accruing from wear and tear, and for exhaustion and diminution of capital in mines, gas wells and oil wells by working or flow.

Section 6 provides that no income of a single person less in amount than $3000, and no income of a married person less in amount than $4000, shall be taxed, but all incomes less in amount than the sums named shall be wholly exempt and non-taxable. While the above exemptions apply inferentially only to citizens, a non-resident may by filing a return showing total income from all sources everywhere be allowed the benefit of the exemptions named, according to his total income and domestic status.

Section 7 provides for the levying of a tax of one-half of one per cent upon the annual net incomes of all business corporations and associations (except partnerships). Section 9 provides for the deductions which are permitted to be made from gross income of such business corporations and associations, in order to ascertain the taxable net income. These are as to expenses of operation, losses by catastrophe, wear and tear and exhaustion, in all substantial respects similar to

those provided by Section 5, supra, for natural persons.

Section 8 exempts wholly all incomes of all labor, agricultural and horticultural organizations; mutual savings banks, the stock of which is not represented by shares; fraternal benefit socities, orders and associations operating under a lodge system and providing life, sick, accident or other benefits to the members thereof, or to the dependents of such members; domestic building and loan associations, and co-operative banks which have no capital stock, and which are run for mutual purposes without profit; cemetery companies owned and operated exclusively for the benefit of their members; corporations and associations operated exclusively for religious, charitable, scientific or educational purposes, wherein no part of the income inures to any stockholder or individual; business leagues, chambers of commerce, and boards of trade, wherein the income does not inure to any stockholder; civic leagues operated exclusively for the promotion of public welfare; clubs organized for recreation or pleasure; mutual insurance companies, ditch and irrigation companies; co-operative telephone companies, wherein dues, fees and assessments are paid to cover necessary expenses only; farmers, fruit growers, and all similar associations, organized to act as sales-agents to market the products of the members thereof; corporations organized to hold property and collect income thereof, wherein such income is paid over to any organization which is itself exempt from this tax; land banks and farm loan associations, and joint stock land banks, so far as the income thereof shall be derived from bonds, or debentures, or another joint-stock bank or any Federal land bank, and all incomes derived from any public utility performing functions of national government, or performing functions incident to the govenment of the State, or of any political subdivision thereof, and incomes from any contract made with the State or any political subdivision thereof, touching a public utility, and wherein the levying of the tax would have the effect to impose

a burden upon the State, or upon any political sub-division thereof.

Section 32 provides that all *taxes paid to the State* by any person or corporation upon real or personal property for any current year, may be deducted from the amount of income tax, which would otherwise be payable by such person or corporation.

Other sections, which are not digested or epitomized supra, either have reference solely to the details of asessment and collection of this tax, or have no material relevancy to the points we find ourselves compelled to consider. Other details may have been omitted, when such seemed to have no bearing upon the points pressed upon our attention, but a reference to the act itself will readily supply to the curious this omission.

I. Some effort, I may mention in passing, is devoted by plaintiff to showing that while the Income Tax Act of this State is a substantial rescript of the Federal Income Tax Law, the fact that the latter has been held constitutional in no wise aids us in determining the validity of the State act. This is frankly conceded by defendant; and in fact, it is so self-evident that even lacking the concession mentioned, comment beyond mere statement of the point made would be idle. The fundamental differences between the Federal Constitution and our State Constitution in most respects make comparisons upon constitutional questions futile and practically valueless. The former is a grant of power, while the latter is a limitation upon power. The State Legislature may legislate upon any subject affecting the welfare of the people, which is not forbidden by the organic law.

*Federal Act.*

One peculiarity of our Constitution dealing with the power to levy taxes is, however, historically interesting. The power to levy taxes is in the Constitution of 1875, specifically conferred by the people upon the Legislature, as is also the power to delegate this authority (the latter perhaps of necessity) by law to counties and other municipal cor-

*Legislative Power.*

porations. [Sec. 1, Art. 10, Const. 1875.] But this general power to tax so confided to the Legislature was by the Constitution most carefully limited by subsequent sections. [Cf. Secs. 2, 3, 4, 5, 6, 7, 8, and 9, Art. 10, Cons.] The Constitution of this State is, therefore, it will be noted, upon the matter of taxation, *both a grant of power and a careful limitation* of the power granted. This was not the case in the Constitution of 1865. In the latter, the power to tax was deemed inherent in the Legislature, because there was no provision therein conferring such power. But the question is merely of academic interest. For the inherent power in the Legislature to levy taxes for public purposes would undoubtedly exist even if the provision in Section 1 of Article 10 of the Constitution, conferring the power, were non-existent. This is elemental, but in addition, was so ruled by this court as to the Constitution of 1865, wherein there was no such provision. [Glasgow v. Rowse, 43 Mo. 479.] It is to be inferred, therefore, that the makers of our Constitution saw fit to express in words an inherent power, in juxtaposition to careful limitations of that power, in order to emphasize and accentuate those limitations.

Reference to the pleadings discloses that the Income Tax Act is alleged by plaintiff to offend against the Constitution of this State in six different ways, and to run counter to the Federal Constitution in two respects. Expressing doubt without deciding whether the versatility of any Legislature is equal to the task of passing an act which could in so wholesale a way offend all of the applicatory provisions of the Constitutions, I pass to a consideration of these contentions in their order.

II. Plaintiff's first contention is that the Income Tax Act violates that provision of the Constitution which requires that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." [Sec. 3, Art. 10, Const. 1875.] This requirement of uniformity applies to and limits both the Legislature and any

**Uniformity.**

county or other municipality to which the Legislature may by law delegate the authority to levy taxes. To make clearer the nature of this contention and its applicability, or the lack thereof, to the Income Tax Act, some self-evident propositions may be mentioned: (a) The Income Tax Act is a revenue measure purely; (b) it is not an occupation tax, because, while it taxes incomes derived from labor, trades, business and professions, it also taxes incomes from rents on land and interest from bonds, money loaned and all other incomes from either real or personal property; (c) it is not a license tax, imposed for regulatory purposes, because there is no element of regulation, or any exercise of the police power involved in any wise or to any degree; (d) it is a direct tax, in contradistinction to an indirect tax, i. e., it is a tax demanded and collectible from the identical persons against whom it is levied, and not one (as is an indirect tax) which is added to the cost or price of the thing taxed, and which is to be borne by the purchaser or consumer of such taxed commodity.

If income is property (and even the majority opinion agrees that it is), then clearly it is a direct property tax, or a direct tax upon property. Income is *ordinarily* paid in money. Money is taxable property. Income is *always* paid either in money, or in kind, that is, in real and personal property from which it accrues or by which it is earned. Of course real and personal property are taxable; so, income is always paid in a commodity, which is taxable by the State. Income, particularly net income which I am here considering, is the original and sole source of all existing private property. The very definition of the word forecloses doubt upon the truth of this fact. For lexicographers define it as "that gain which proceeds from labor, business, property or capital of any kind." [Webster's Dict.] It is defined by the law-writers in terms similar in all substantial respects. [22 Cyc. 63.] The law-writers follow the case-law in their definitions. [Stratton's Independence v. Howbert, 231 U. S. 1. c. 415; Opinion of the Justices, 220 Mass. 1. c. 624; Opinion of

the Justices, 195 Mass. 607; Opinion of the Justices, 77 N. H. 600.] In Stratton's Independence Mine Limited v. Howbert, supra, at page 415, it is defined ''as the gain derived from capital, from labor, or from both combined.'' Even the Income Tax Act itself defines an income substantially as above, and in such wise as to make manifest that it is property, thus:

''The net income of a taxable person shall include gains, profits, and income derived from salaries, wages or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, business, trade, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or the use of or interest in real or personal property, also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever.''

It is true that such portion of any given income as is consumed in living expenses cannot be added to capital. But it is too plain for argument that even such part of an income is property, and so remains till consumed for immediate needs. If it is paid in money, which being the medium of exchange is the universal representative of property, we already tax it under the general or exising law as property, if on hand on the first day of June; likewise if it be paid in kind, that is, in the same sort of commodity from which it is derived, it is taxable as property under the existing law, if on hand June the first. Besides, the tax here levied upon incomes is not levied solely upon incomes consumed in living expenses as it accrues, but it is levied alike upon that income which is immediately consumed, and upon that (a part of which it takes) which is added to capital and which becomes permanent tangible property, otherwise taxed *ad valorem*.

In a way of speaking and by a figure of speech it may sound plausible to say that in the production of income ''labor is the tree and income the fruit,'' or that ''capital is the tree and income the fruit'' (Waring

v. Savannah, 60 Ga. 1. c. 100), but even this plausibility applies only to the process of production, and when production is completed the fruit instantly becomes property. Even more plausible does this figure of speech appear when applied to income which is consumed, except as to the part taken away as taxes, by immediate needs. But while plausible, it is obviously erroneous, for even if a laborer, or a professional man, collect pay, i. e., income, for his services in money, he exchanges that money for food and clothing, and that food and clothing are property. The fact that such property is presently consumed does not alter its status as property. The owner of real estate may rent it either for money, the representative of all property, or for a part of the crop grown upon the land. In both cases, what he gets as rent is income from the land and is income under the act I am now discussing, and that income is property, whether it is paid in money, or in bushels of wheat or corn, or in bales of cotton. And the State under this act proposes to take one-half bushel from every hundred bushels of that wheat-rent and two and one-half pounds from every bale of that cotton-rent, regardless of whether the remainder of the wheat or the cotton are made into bread and clothing for the family or not.

There was a time when some of the courts held that a tax upon incomes was not a tax upon property (Waring v. Savannah, supra; Glasgow v. Rowse, 43 Mo. 1. c. 491), thus in substance and effect holding that "the gain from labor and capital" is not property. The fundamental error in such a view grew out of the heresy that "gain from labor or capital," i. e., income, is for a shadowy season a sort of intangible entity which the State may take and tax in a transition or chrysalis stage, after its production but pending its fixed investment in some other sort of property, or pending its becoming property, or transformation into property. We are nowhere told in these cases when the change

275 Mo.—24

from an intangible entity, to tangible, taxable property takes place.

However, the origin of the heresy is not important now, for scarcely any respectable court is adhering to the view *that income derived from real and personal property, at least,* is not itself property and that a tax upon such income is not a charge against and a tax upon such property itself. [Pollock v. Farmers' Loan & Trust Co., 157 U. S. l. c. 596; Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601; Opinion of the Justices, 220 Mass. 613; Brushaber v. Union Pacific Railroad, 240 U. S. l. c. 15; Welton v. Missouri, 91 U. S. l. c. 279; State v. Bengsch, 170 Mo. 81; Knowlton v. Moore, 178 U. S. l. c. 82; Flint v. Stone Tracy Co., 220 U. S. l. c. 149; Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397; State ex rel. Bolens v. Frear, 1915B. L. R. A. l. c. 592; Brown v. Maryland, 12 Wheat. l. c. 444; Weston v. Charleston, 2 Peters, 449; Almy v. California, 24 Howard, 169; Railroad Co. v. Jackson, 7 Wall. 262; Cook v. Pennsylvania, 97 U. S. 566; Leloup v. Mobile, 127 U. S. 640; Lott v. Hubbard, 44 Ala. l. c. 603; Philadelphia, etc., Co. v. Pennsylvania, 122 U. S. 326.]

This whole question was reviewed at great length by the Supreme Court of the United States in the case of Pollock v. Farmers' Loan & Trust Co., 157 U. S. l. c. 580 *et seq.,* where it was said.:

"The requirement  of the Constitution is that no direct tax shall be laid otherwise than by apportionment—the prohibition is not  against direct taxes on land, from which the implication is sought to be drawn that indirect taxes on land would be constitutional, but it is against all direct taxes—and it is admitted that a tax on real estate is a direct tax.   Unless, therefore, a tax upon rents or income issuing out of lands is intrinsically so different from a tax on the land itself that it belongs to a wholly different class of taxes, such taxes must be regarded as falling within the same category as a tax on real estate *eo nomine.*   The name of the tax is unimportant.   The real question is, is there any basis upon which to rest the contention that real

estate belongs to one of the two great classes of taxes, and the rent or income which is the incident of its ownership belongs to the other? We are unable to perceive any ground for the alleged distinction. An annual tax upon the annual value or annual user of real estate appears to us the same in substance as an annual tax on the real estate, which would be paid out of the rent or income. This law taxes the income received from land and the growth or produce of the land. Mr. Justice PETERSON observed in Hylton's case, 'land, independently of its produce, is of no value;' and certainly had no thought that direct taxes were confined to unproductive land.

"If it be true that by varying the form the substance may be changed, it is not easy to see that anything would remain of the limitations of the Constitution, or of the rule of taxation and representation, so carefully recognized and guarded in favor of the citizens of each State. But constitutional provisions cannot be thus evaded. It is the substance and not the form which controls, as has indeed been established by repeated decisions of this court. Thus in Brown v. Maryland, 12 Wheat. 419, 444, it was held that the tax on the occupation of an importer was the same as a tax on imports and therefore void. And Chief Justice MARSHALL said: 'It is impossible to conceal from ourselves, that this is varying the form, without varying the substance. It is treating a prohibition which is general, as if it were confined to a particular mode of doing the forbidden thing. All must perceive, that a tax on the sale of an article, imported only for sale, is a tax on the article itself.'

"In Weston v. Charleston, 2 Pet. 449, it was held that a tax on the income of United States securities was a tax on the securities themselves, and equally inadmissible. The ordinance of the city of Charleston involved in that case was exceedingly obscure; but the opinions of Mr. Justice THOMPSON and Mr. Justice JOHNSON, who dissented, make it clear that the levy was upon the interest of the bonds and not upon the bonds,

and they held that it was an income tax, and as such sustainable; but the majority of the court, Chief Justice MARSHALL delivering the opinion, overruled that contention.

"So in Dobbins v. Commissioners, 16 Pet. 435, it was decided that the income from an official position could not be taxed if the office itself was exempt.

"In Almy v. California, 24 How. 169, it was held that a duty on a bill of lading was the same thing as a duty on the article which it represented; in Railroad Co. v. Jackson, 7 Wall. 262, that a tax upon the interest payable on bonds was a tax not upon the debtor, but upon the security; and in Cook v. Pennsylvania, 97 U. S. 566, that a tax upon the amount of sales of goods made by an auctioneer was a tax upon the goods sold.

"In Philadelphia Steamship Co. v. Pennsylvania, 122 U. S. 326, and Leloup v. Mobile, 127 U. S. 640, it was held that a tax on income received from interstate commerce was a tax upon the commerce itself, and therefore unauthorized. And so, although it is thoroughly settled that where by way of duties laid on the transportation of the subjects of interstate commerce, and on the receipts derived therefrom, or on the occupation or business of carrying it on, a tax is levied by a state on interstate commerce, such taxation amounts to a regulation of such commerce, and cannot be sustained, yet the property in a state belonging to a corporation, whether foreign or domestic, engaged in foreign or domestic commerce, may be taxed, and when the tax is substantially a mere tax on property and not one imposed on the privilege of doing interstate commerce, the exaction may be sustained. 'The substance and not the shadow, determines the validity of the exercise of the power.' [Postal Telegraph Co. v. Adams, 155 U. S. 688, 698.]"

While the Supreme Court was divided upon a number of propositions up for judgment in the Pollock case, supra, it was not divided upon the question whether a tax upon income accruing out of real or personal property is not a tax upon such property itself. [Pol-

lock v. Farmers' Loan & Trust Co., 158 U. S. 601;
Knowlton v. Moore, 178 U. S. 1. c. 81.] For in the
second Pollock case, 158 U. S. 601, l. c. 618, it was said:

"Our previous decision was confined to the con-
sideration of the validity of the tax on the income from
real estate, and on the income from municipal bonds.
The question thus limited was whether such taxation
was direct or not, in the meaning of the Constitution;
and this court went no further, as to the tax on the in-
come from real estate, than to hold that it fell within
the same class as the source whence the income was
derived, that is, that a tax upon the realty and a tax upon
the receipts therefrom were alike direct; while as to the
income from municipal bonds, that could not be taxed
because of want of power to tax the source, and no
reference was made to the nature of the tax as being
direct or indirect.

"We are now permitted to broaden the field of
inquiry, and to determine to which of the two great
classes a tax upon a person's entire income, whether
derived from rents, or products, or otherwise, of real
estate, or from bonds, stocks, or other forms of per-
sonal property, belongs; and we are unable to conclude
that the enforced subtraction from the yield of all the
owner's real or personal property, in the manner pre-
scribed, is so different from a tax upon the property
itself, that it is not a direct, but an indirect tax, in the
meaning of the Constitution."

In the Opinions of the Justices, 220 Mass. 1. c. 623,
it was said:

"A tax upon income from money on deposit or at
interest, from bonds, notes or other debts due, and as
dividends from stocks, coupled with exemption from all
other taxation of the principal from which such income
flows, is in substance and effect a tax upon the property
from which it is derived. A tax upon the income of
property is in realty a tax upon the property itself.
Income derived from property is also property. Prop-
erty by income produces its kind, that is, it produces
property and not something different. It does not mat-

ter what name is employed. The character of the tax cannot be changed by calling it an excise and not a property tax. In its essence a tax upon income derived from property is a tax upon the property. This was decided after most elaborate consideration, with affluent citation of authorities, in Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 561; s. c., 158 U. S. 601. We do not need to review that ground or to re-state the arguments in its support. It follows that a tax upon such income is a property and not an excise tax. This point is covered also by Opinion of the Justices, touching the so-called three-mill tax, reported in 195 Mass. 607. We adhere to the principles there stated and to the conclusion there reached. To the same effect see Opinion of the Justices, 77 N. H. 611.''

So much may be said upon the specific question whether a tax upon an income derived from real or personal property, is also a tax upon the property itself from which the income accrues. Whether a tax upon an income derived from labor or from the practice of a profession, is a tax upon that labor and that profession, and therefore a tax upon property, I need not stop to consider. I think it is, and I think the cases so hold. [Pollock v. Farmers' Loan & Trust Co., 157 U. S., l. c. 580, and cases cited, supra.] Indeed, the learned majority opinion concedes both propositions, as matters so simple and apodeictic as to render argument thereof offensive to the intelligent. Thus, to-wit, on these points says the majority opinion: *"That income is property, because it is an ownable thing is a matter of simple apprehension* which has been affirmed under the definition of property above stated. *That it is 'in effect' a taxation of the labor or capital which produced it, may be conceded,* since by reaction it affects the value of the thing or things from which it is derived." (Italics are mine). Obviously, with this thoroughgoing concession even of a self-evident truth, I could put an end to these remarks and reverse this case, but it is near enough to my present purpose to grant for the sake of the argument only that a tax

upon income derived from labor or from the practice of a profession is not a tax upon the identical labor or profession from which it accrues. But obviously the fact and the concession merely serve to accentuate the glaring lack of uniformity in the imposition and payment of the taxes proposed to be levied by the Income Tax Act.

Manifestly, the subject of taxation and the thing taxed, or by this act proposed so to be, is an income, that is to say, the whole of the net income of a business corporation, the net income in excess of $3000 of all single persons, and the net income in excess of $4000 of all married persons. Does the act tax incomes uniformly as the Constitution requires? I think not. The lack of uniformity is I think patent: (1) Incomes of single persons less in amount than $3000, are not taxed at all. [Sec. 6, p. 527, Laws 1917.] (2) Incomes of married persons, less in amount than $4000, are not taxed at all. [Sec. 6, p. 527, Laws 1917.] (3) Incomes from real property and from personal property are in effect taxed at the rate of 35 cents on each $100 thereof. [Sec. 32, p. 538, Laws 1917.] (4) Incomes from labor and professions are taxed fifty cents on the $100 thereof. [Sec. 32, p. 538, Laws 1917.] (This condition is brought about by deducting from the tax payable on incomes, the current *ad valorem* tax paid to the State on either real or personal property, and *it is a legislative confession that the income tax is a tax upon property*). (5) Incomes of business corporations are taxed on the total amounts thereof without any exemption whatever. [Sec. 7, p. 528, Laws 1917.] (6) Incomes from numerous alleged educational, fraternal, charitable, benevolent, agricultural and religious corporations and associations are wholly exempted from the tax. [Sec. 8, p. 529, Laws 1917.] This exemption list, which is itself violative of another section of the Constitution (Secs. 6 and 7, Cons. 1875), (if income is property, and if an income tax is a tax on property), would not of course violate the uniformity provision of our Constitution, if there were in the Constitution any

*Exemptions.*

authority to exempt the divers businesses, associations and corporations set down in this lengthy list, but there is no such authority. The Constitution expressly declares void all laws creating exemptions other than those of the kinds and classes specified in Section 6 of Article 10 thereof. [Sec. 7, Art. 10, Const. 1875.] Likewise I apprehend exemptions would be warranted either in cases of corporations or persons, when the income is already taxed either at the source or in the hands of the recipient. But the latter point would not materially affect the condition presented.

Whether this tax is a property tax or a license tax, or an occupation tax; whether it is a direct tax or an indirect tax, the Constitution of this State requires it to be uniform in its burdens upon the same class of subjects, that is to say, upon incomes. [State v. Bengsch, 170 Mo. 81; City of Independence v. Gates, 110 Mo. 1. c. 382; State ex rel. v. Switzler, 143 Mo. 287; Elting v. Hickman, 172 Mo. 237; Kansas City v. Whipple, 136 Mo. 475.] The word "uniform" is used in the Constitution in its usual and ordinary meaning, which is, "conforming to one rule; having the same form, manner or degree; not varying or variable." [Webster's Dict.] Clearly, it will not permit the levying of a "graduated" tax, on property, therefore it will not permit of forbidden exemptions, which are in a sense but violent forms of a graduated tax. Uniformity of taxation "upon the same class of subjects within the territoral limits of the authority levying the tax," means, and therefore it requires, (a) that the tax levied shall be the same in one county of the State as it is in any other, and (b) that all property and each dollar's valuation of the given subject or thing proposed by the law to be taxed shall be burdened by the tax in an equal degree. It forbids, I think, that part of the property, or some one or more of the component elements of the subject proposed to be taxed, shall be selected to bear the whole burden of the tax while other constituents of the subject taxed are left wholly unburdened thereby.

In the case of City of Independence v. Gates, supra, at page 382, this court said:

"Taxation, whether general or special, must be uniform and must be distributed among those who are to pay it by a just ratio of apportionment. It cannot be levied by an arbitrary command of the lawmaking power. One rule cannot be applied to one owner and a different rule to another owner."

Likewise, quoting from Judge COOLEY, it was said in the case of Kansas City v. Whipple, 136 Mo. l. c. 479:

"'Inequality does not necessarily follow the restricting of a tax to a few subjects only, or even to a single subject. . . . But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible. It is immaterial on what ground the selection is made, . . . for if the principle of selection be once admitted limits cannot be set to it, and it may be made use of for the pupose of oppression, or even of punishment.'"

The provision of our Constitution requiring uniformity of levy upon the same class of subjects, was not contained in the Constitution of 1865 (State ex rel. v. Lewis, 256 Mo. 121), but it came from the Pennsylvania Constitution of 1874. It is clear, therefore, that no question such as now confronts us was before this court in the case of Glasgow v. Rowse, 43 Mo. 479, which was decided in 1869. It follows, that while the reasoning in that case is in some respects archaic, no necessity arises for overruling it, so far as concerns the specific point of uniformity *vel non* in the levying of the tax. While an authority (*upon the sole theory that income is not property*) against my view that the act fails to tax property in proportion to its value, it is an authority in favor of the view that the act is not uniform in its operation. This for the reason that it classifies an income tax as one "having a mixed effect upon persons and property." If the Income

Tax Act operates in one way upon persons and in another way upon property it is not uniform.

The makers of our Constitution, as hinted supra, took this provision *bodily* from the 'Constitution of Pennsylvania of 1874. [Sec. 1, Art. 10, Const. of Pa. of 1874.] Construing the clause of the Pennsylvania Constitution which required uniformity of levy upon the same class of subjects, in the case of Cope's Estate, 191 Pa. St., l. c. 22, wherein a collateral inheritance tax act was alleged to be invalid, for that it exempted from the operation of the law and from taxation all estates of the value of $5000 or less, in connection with an exemption provision also like ours, the Supreme Court of that State said:

"The next clause of Section 1 expressly authorizes the Legislature to exempt from taxation four specified classes or kinds of property. This specific delegation of authority to exempt impliedly prohibits express exemption from taxation of any other property, but to place this matter beyond the reach of doubt, it is expressly ordained in Section 2 that 'all laws exempting property from taxation other than the property above enumerated shall be void.'

"These limitations on the power of the Legislature mean something. They are plainly intended to secure, as far as possible, uniformity and relative equality of taxation, by prohibiting generally the exemption of a certain part of any recognized class of property, and subjecting the residue to a tax that should be borne uniformly by the entire class, and by guarding against any other device that necessarily or intentionally infringes on the established rules of uniformity and relative equality which, as we have seen, underlie every just system of taxation. In any view that can reasonably be taken of these limitations, it must be manifest to any reflecting mind that the act in question offends against them by undertaking to wholly exempt from taxation the personal property of a very large percentage of decedent's estates, and impose increased and unequal burdens on the residue of the same class of property.

Wire Co. v. Wollbrinck.

"If the authority to exempt, etc., which was assumed and exercised by the Legislature in this case, is sanctioned by this court, the constitutional rule of uniformity virtually becomes a dead letter, and in lieu of the will of the people, as plainly declared in the .fundamental law of the State, the unrestrained will of the Legislature becomes the supreme law on that subject. If the Legislature had authority under the Constitution to do what was done in this case, they had like authority to reverse their order of taxation, etc., and thus impose the tax on personal property amounting in value to $5000 and less, and exempt therefrom all property of same recognized class in excess of that sum; and, consequently, they have like authority, in every case, to establish any other arbitrary ratio between the amount in value of property to be taxed and that which shall be exempt therefrom, in any class of subjects."

If there is error in the above holding of the Supreme Court of Pennsylvania, it arises fundamentally, from regarding an inheritance tax as a tax on property, and not from its interpretation of uniformity.

I conclude that however beneficent and greatly to be commended may be the scheme of putting the burden of taxation upon those citizens best able to sustain it by taxing incomes, such a plan cannot be carried out in this State unless the Constitution be amended, or unless all incomes be taxed, without exemptions, as to amount, and without exemptions as to source, other than those set down in the organic law. The Constitution of the State may be outgrown and stand badly in need of amendment, but this consideration addresses itself to the people and not to the courts. This court, I had supposed, sits here not to amend the Constitution, or to write a new one, but merely to interpret the one which the people have written. If that Constitution by reason of age and the progress of the times lags behind the progressive procession, such fact may furnish a good reason for adopting a new Constitution; it furnishes no reason for misinterpreting or doing violence to an old one. But few States of the Union have passed acts

taxing incomes. These, practically without exception, either had provisions. in their constitutions expressly permitting such form of taxation, upon a graduated basis, or else they were compelled to adopt such provisions by amendments. [Campbell v. Shaw, 11 Hawaii, 112; State ex rel. v. Frear, 148 Wis. 456; Purnell v. Page, 133 N. C. l. c. 126; Aldermen v. Wells, 67 S. E. (S. C.) 781.]

It follows also from what has been said above that the Income Tax Act of 1917 (Laws 1917, pp. 524-538, secs. 1-32 ) is also unconstitutional for that it is violative of Section 4 of Article 10 of the Constitution, whereby it is provided that "all property subject to taxation shall be taxed in proportion to its value." The act may also be constitutionally invalid (the fact that it levies a tax upon property being conceded) in respect of other contentions urged upon us by learned counsel for plaintiff, but since I am fully convinced of its invalidity in respect of the behalves discussed, no occasion exists to burden space with a consideration of other points so ably mooted.

*Woodson, J.*, concurs in these views fully; *Williams, J.*, concurs in the result of this dissent, and concurs fully in that portion thereof which holds that the tax on incomes is a tax on property, and that the Income Tax Act violates Sections 6 and 7 of Article 10 of the Constitution.